**STATE of Iowa, Plaintiff-Appellee,**

v.

**John Steven LANSCAK,
Defendant-Appellant.**

No. 85–1518.

Court of Appeals of Iowa.

Feb. 25, 1987.

Charles L. Harrington, Appellate Defender, and Raymond E. Rogers, Asst. Appellate Defender, for defendant-appellant.

Thomas J. Miller, Atty. Gen., Lona Hansen, Asst. Atty. Gen., and David Welu, Dallas Co. Atty., for plaintiff-appellee.

Heard by DONIELSON, P.J., and SCHLEGEL and SACKETT, JJ.

DONIELSON, Presiding Judge.

The defendant, John Steven Lanscak, appeals from his conviction, following a jury trial, for first-degree robbery and attempt to commit murder. The defendant contends that the district court erred in overruling his motion for a change of venue. The defendant also contends that the district court should have given the jury instructions stressing that a certain witness had made prior inconsistent statements. We affirm.

The defendant was accused of feigning car trouble and then robbing and shooting a passing motorist who stopped to help in Dallas County. The *Des Moines Register* reported the incident the following day, and for the next seventeen months before trial the *Register* and the Dallas County newspaper would periodically report on the progress of the police's investigation of the crime and the possible suspects. Nine months before trial, the *Register* ran an article repeating the details of the attack and the victim's condition and treatment since the attack. The article indicated the victim, Robert Crowl, had suffered bouts of depression resulting from the attack and that he had difficulty obtaining disability benefits.

Approximately four months before trial, the *Register* reported that the defendant and two other suspects had been arrested and charged with the attempted murder of Crowl. Several days later the Dallas County newspaper similarly reported the defendant's arrest. The week before trial, the Dallas County newspaper reported that the county attorney had adequate information to show that the defendant attempted to murder Crowl. The article also indicated that the defendant had been charged in the case.

On appeal, the defendant claims that as a result of these newspaper articles, he could not get a fair trial in Dallas County because the local media publicized the crime extensively and because the victim, Crowl, was well known in the area. The defendant also contends that because a certain witness had made prior inconsistent statements at trial, the court should have instructed the jury that (1) the witness's prior inconsistent statements could be considered in evaluating the credibility of the witness's trial testimony, and (2) that if a prior inconsistent statement had been made under oath in a deposition, it could be considered as substantive evidence in the case.

Iowa Rule of Criminal Procedure 10(10)(b) states that a trial court should grant a motion for a change of venue if it is convinced from the evidence introduced in support of the motion that there is a substantial likelihood that the defendant cannot receive a fair and impartial jury trial in the county. Our review on this issue is de novo, and we will reverse only if the trial court abused its discretion in denying the motion. *State v. Spargo*, 364 N.W.2d 203, 207 (Iowa 1975). "A defendant who seeks reversal of a conviction on the basis of denial of his motion for change of venue must show either actual prejudice on the part of the jury or must show that the publicity attending the case was so pervasive and inflammatory that prejudice must be presumed." *Id.; State v. Gavin*, 360 N.W.2d 817, 819 (Iowa 1985).

Exposure to news accounts does not by itself create a substantial likelihood of prejudice in the minds of prospective jurors. *State v. Johnson*, 318 N.W.2d 417, 422 (Iowa 1982). In evaluating the impact of news reports on prospective jurors, we look to the newspaper articles themselves and the passage of time between the news accounts and the trial. *Gavin*, 360 N.W.2d at 819–20; *State v. Hickman*, 337 N.W.2d 512, 515 (Iowa 1983). News reports which objectively and factually report the occurrence of the crime and the events surrounding the criminal proceedings do not give rise to the kind of inflammatory publicity which causes a substantial likelihood of prejudice in the minds of prospective jurors. *Johnson*, 318 N.W.2d at 422. For

purposes of determining jury prejudice, the crucial question is not what a juror has been exposed to, but whether the juror holds such a fixed opinion of the merits of the case that he or she cannot judge impartially the guilt or innocence of the defendant. *Gavin*, 360 N.W.2d at 819. We also look to the *voir dire* response of each juror when considering a claim of prejudicial pretrial publicity. *Hickman*, 337 N.W.2d at 515; *State v. Marr*, 316 N.W.2d 176, 181 (1982). Where each juror candidly recalls his knowledge of pretrial publicity and states that he or she can put aside exposure to pretrial publicity and come to a decision based on evidence produced at trial, no valid claim can be made showing a substantial likelihood of prejudice. *Marr*, 316 N.W.2d at 181.

In the instant case, we believe that an examination of both the newspaper articles and the *voir dire* reveals that there was no substantial likelihood of prejudice from pretrial publicity and that the defendant is not entitled to relief on this claim.

An examination of the pretrial publicity discloses that on the whole very objective and factual reporting took place. No view on the guilt or innocence of defendant was ever expressed by the news media. The media's coverage of the crime and the subsequent activities surrounding the subsequent criminal investigation was fair, accurate, and was not misleading. No emotional editorials were ever published concerning the defendant or other suspects. Each of the articles constituted an objective description of the basic facts of the incident and the subsequent criminal investigation or the preliminary pretrial procedures in the case. The stories appearing on April 16, 18, and 25, 1985, went no further than reporting defendant's arrest and the ensuing investigation. There was no attempt by the media to inflame the passions of the public mind or to sensationalize the event.

We additionally note that nearly all newspaper articles appeared from four to seventeen months prior to defendant's trial. This period before trial is significantly more removed from the period of the time of trial than those held not prejudicial in

*Hickman*, 337 N.W.2d at 515 (where newspaper articles appeared less than two months prior to trial), and in *Johnson*, 318 N.W.2d at 423 (where newspaper articles appeared approximately three months before trial). There was therefore a sufficient period of time to dissipate any prejudicial effect that might have been created by any adverse publicity.

We find only one newspaper article which may be even remotely regarded as prejudicial. The Dallas County newspaper the week before trial published an article in which it was reported that the county attorney believed he had adequate information to show that the defendant attempted to murder Crowl. We do not, however, believe that the county attorney's statement so sensationalized the case as to create a substantial likelihood that defendant could not receive a fair trial. Just as jurors know that major criminal offenses carry severe penal sanctions, *State v. Armento*, 256 N.W.2d 228, 230 (Iowa 1977), it would also be realistic to expect potential jurors to know that the county prosecutor would not bring a case to trial unless he or she believed there was adequate evidence to secure a conviction. Though perhaps such statements by the county prosecutor are better left for trial, we nevertheless find that this statement, without more, did not give rise to a substantial likelihood of potential prejudice in the minds of the prospective jurors.

We are satisfied from our own examination of the *voir dire* of the potential jurors that there was no substantial likelihood of prejudice to defendant. It is apparent from the record that most of the potential jurors had been exposed to some aspects of the case. Several jurors stated that they had read all or part of the newspaper article which had appeared in the Dallas County newspaper the Friday before trial. Those jurors who had read all or part of the article could remember only certain aspects of the article, such as what the charges were, who was involved, or how long the trial would be. Several jurors did admit to recalling the county prosecutor's comments, but stated that nothing they

had read would influence them one way or another.

Only one of the potential jurors read the *Register* article concerning Crowl's mental condition following the crime, but stated that the article would in no way impair his ability to reach an impartial decision. Additionally, five of the jurors had not seen or could not recall seeing anything about the case; one potential juror in particular stated that he never paid attention to the news or read newspapers.

Several jurors on the panel stated that they had learned about the case from talking to people or knew relatives of Crowl. One juror stated that she knew Crowl's sister-in-law and would be embarrassed to serve on the jury, but stated that she still would be able to render an impartial decision. Another stated that she was acquainted with the Crowl family, but believed her acquaintanceship would not influence her in any way.

It is evident from our examination that most of the potential jurors had little or limited recollection of the newspaper articles about the case. Few of the panel members who had read or heard about the case remembered specific details of what they had read or heard; some remembered nothing at all. Those potential jurors who did remember specific details stated that their ability to form an impartial decision would not be affected by what they had read or heard. Moreover, any prejudice from most of the pretrial publicity would have been dissipated by the extensive gap between the date of publication of those articles and the date of trial. The present case is in no way similar to *State v. Robinson*, 389 N.W.2d 401 (Iowa 1986), where almost everyone selected for the jury panel had read or heard about the case, and some had discussed the case with the State's witnesses before trial. We are therefore satisfied that the jurors selected would give the defendant a fair trial.

Based on the present record, we hold that defendant has failed to show that the trial court abused its discretion in overruling defendant's motion for change of venue.

The defendant also contends that the trial court erred in refusing defendant's requested jury instruction on witness credibility. We find no merit in such a contention.

At trial, witness Dan Riley had testified that the defendant had borrowed his car on the evening of the crime between the hours of 6:00 p.m. and 8:00 p.m., but thought that the actual time was closer to 8:00 p.m. Riley stated that another suspect in the crime, Terry Peacock, was with the defendant when the defendant asked Riley if he could borrow his car. Riley testified that after being gone for about one and a half hours, the defendant and Peacock returned to the station and parked Riley's car in the same spot it had been in before. Riley also testified that the defendant told him not to drive the car, but at Riley's insistence, stated to Riley that he would follow Riley home, and if Riley were stopped, the defendant would say he had been driving the car that evening.

On cross-examination, however, Riley admitted that other people had also borrowed his car frequently. Riley admitted he could not remember the date the defendant borrowed the car, nor could he recall the month in which these events occurred. Riley also testified that the defendant sported a beard on the day he borrowed the car, contrary to Crowl's testimony. Riley also testified that when the police questioned him, he did not believe he was going to be arrested, but later testified that he thought that he was going to be arrested.

At trial, the defendant requested that the court give specific instructions on prior inconsistent statements by Riley. The trial court refused, and instead gave Instruction No. 24, a general witness credibility instruction.

The granting or denial of requested jury instructions rests within the broad discretion of the trial court. *State v. Lindsey*, 302 N.W.2d 98, 102 (Iowa 1981). "The trial court is not bound to any model or form in wording instructions, and a requested instruction may be properly refused if the points raised are otherwise substantially covered." *State v. Harrington*, 284

N.W.2d 244, 250 (Iowa 1979), citing *State v. Wright*, 274 N.W.2d 307, 313 (Iowa 1979). Citing *State v. Milliken*, 204 N.W.2d 594, 596 (Iowa 1973), the *Harrington* court noted that instructions which emphasize specific evidence tend to lead a jury to dissociate the evidence so emphasized from the other evidence they are bound to consider. *Harrington*, 284 N.W.2d at 249. The court went on to hold that the proper practice is to give a general instruction applicable to all witnesses. *Id.* at 250. These principles were reaffirmed in *State v. Bishop*, 387 N.W.2d 554, 561 (Iowa 1986), wherein the court stated that "[u]nder the general credibility instruction the jury would consider impeaching evidence in determining the weight accorded to a witness' testimony, even though their attention was not specifically drawn to such evidence."

■ Instruction No. 24, which was Iowa Uniform Jury Instruction No. 105, informed the jury they were the sole judges of the weight of the evidence and the credibility of the witnesses. In addition, the instruction told the jury that in passing on the credibility of witnesses they should consider the means of knowledge of matters of which [the witnesses] speak . . . their interest or lack of interest in the result of the trial, the motives, if any, actuating them as witnesses, their . . . bias or prejudice, [and] . . . whether their testimony is corroborated or contradicted." Based upon the principles set forth in *Harrington* and *Bishop*, we believe Instruction No. 24 was the proper instruction to be given on witness credibility, and we believe the trial court did not err in refusing to grant defendant's requested specific instruction.

AFFIRMED.