**STATE of Iowa, Appellee,**

v.

**Jon D. WILLIAMS, Appellant.**

**No. 86–1123.**

Supreme Court of Iowa.

Aug. 17, 1988.

Charles L. Harrington, Appellate Defender, Barbara M. Anderson and John P. Messina, Asst. Appellate Defenders, for appellant.

Thomas J. Miller, Atty. Gen., Richard J. Bennett, Asst. Atty. Gen., E.A. Westfall, Co. Atty., and Joseph J. Hrvol and Richard J. Hauser, Asst. Co. Attys., for appellee.

CARTER, Justice.

Defendant, Jon D. Williams, appeals from judgment of conviction of first-degree murder following a jury trial. He asserts reversible error occurred in the admission of evidence. The court of appeals affirmed defendant's conviction by operation of law as a result of an equally divided vote. On our review of the court of appeals decision, we conclude defendant's claims of error have merit, reverse the judgment of conviction, and remand the case to the district court for a new trial.

Defendant was charged with first-degree murder in the death of his wife, Nancy Williams. He reported a shooting to police in the late evening of January 9, 1986. When officers arrived at the Williams' residence, they found Nancy face down on her bed and shot through the head. She had a .22 caliber revolver in her hand. She died several hours later. Defendant told police he had struggled with Nancy over possession of the gun after she had threatened to shoot him. He stated that during this struggle the gun accidentally discharged wounding Nancy in the head.

The gun found in Nancy's hand had inexplicably been recocked. Expert testimony offered by the State at trial indicated an absence of barium on Nancy's hands, a circumstance which the expert indicated was inconsistent with her having held the weapon when it discharged. Other expert testimony offered by the State indicated Nancy had been shot while lying on the bed rather than while standing beside it as defendant had indicated. Two witnesses, David Yochum and Edward May, testified that defendant had, in their presence, threatened to kill Nancy only a few hours before her death. Other evidence material to the issues on appeal will be discussed in connection with our consideration of the legal issues which are presented.

## I. *Testimony of the Victim's Attorney Concerning Conversations with the Victim and the Defendant's Attorney.*

The first two assignments of error involve testimony given by an attorney with whom Nancy Williams was consulting in regard to bringing an action to dissolve her marriage to defendant. These consultations occurred on January 7, 1986, and again on January 9, 1986, the day Nancy died.

Nancy's attorney was permitted to testify over a hearsay objection that during the January 9 consultation Nancy told him that defendant, on the previous day, had threatened to throw her through a plate glass window and use the broken glass to cut her head off. Also received over objection was testimony by this witness concerning a conversation he had on January 9 with another lawyer who he believed was representing defendant with respect to his domestic problems. Nancy's lawyer testified that this attorney told him during their conversation that, as a result of his conversations with defendant, he believed defendant might kill Nancy if served with an injunction.

■ Defendant asserts this testimony by Nancy's lawyer was inadmissible hearsay. When analyzed in accordance with the dictates of Iowa Rule of Evidence 801, this contention appears to be correct.[1] In the first item of challenged testimony, the witness was repeating Nancy's out-of-court statement to him about a threat which defendant made to her. The only discernible purpose of this testimony was to establish the threat was made. That, of course, depends on the truth of the matters asserted by Nancy.

■ The second item of challenged testimony, in order to be relevant, must be viewed as a repetition by defendant's domestic relations attorney of threats made

by defendant toward Nancy. Such relevance depends on the truth of the matters asserted by defendant's lawyer. Consequently, this item of challenged testimony also falls within the definition of hearsay contained in Iowa Rules of Evidence 801(c), (d).

The State argues Iowa law recognizes a special exception to the hearsay rule in homicide cases for threats made to the victim which are communicated by the victim to a third party. As support for this contention, it relies on *State v. Hinkle*, 229 N.W.2d 744, 747 (Iowa 1975). We believe the admissibility of the alleged hearsay statements in *Hinkle* was justified, if at all, on the ground they were not being offered to prove the truth of the matters asserted.[2] The record in the present case does not suggest the State was offering the challenged evidence for a purpose in which the truth of the hearsay statements was not an issue.

■ The State also relies on the doctrine of curative admissibility to sustain admission of the testimony concerning what defendant's domestic relations lawyer told Nancy's attorney. At the time this evidence was elicited at trial, the following colloquy took place:

Q. I think you indicated on cross-examination that Mr. Gallner [defendant's domestic relations attorney] told you she [Nancy] took property and money and left the house with it.... [H]e must have got that information from Mr. Williams. Do you remember that? A. Yes.

Q. Did Mr. Gallner tell you anything else that made you concerned for your client's safety?

[DEFENDANT'S ATTORNEY]: I object to that. Incompetent, immaterial,

---

1. The testimony of the witness facially involves double hearsay, *i.e.*, what defendant told his lawyer and Nancy and what they told the witness. The first leg in this chain does not involve hearsay, however, because it involves the declarations of a party-opponent. We therefore analyze the issue by viewing Nancy and defendant's domestic relations lawyer as the declarants.

2. If *Hinkle* can be interpreted as recognizing a special hearsay exception for threats toward the victim which are communicated by the victim to third persons, that rule did not survive our adoption of the Iowa Rules of Evidence in 1983.

and irrelevant and beyond the scope of direct. It is hearsay.

[PROSECUTING ATTORNEY]: Can I respond to that objection? There was a hearsay thunderstorm on cross-examination. I'm just here with a little bucket trying to catch a little of it, Judge. I'm completing the story.

With respect to the doctrine of curative admissibility, we have recognized in *State v. Padgett*, 300 N.W.2d 145, 147 (Iowa 1981), and *State v. Pepples*, 250 N.W.2d 390, 394 (Iowa 1977), that when one party introduces inadmissible evidence, with or without objection, the trial court has discretion to allow the adversary to offer otherwise inadmissible evidence on the same subject when it is fairly responsive. Notwithstanding our recognition of this principle, we fail to see how the hearsay testimony which came in on direct examination concerning Nancy's removal of certain personal property justified the receipt of the challenged hearsay testimony concerning threats against the victim's life. The district court erred in receiving the testimony of Nancy's attorney concerning conversations with her and with defendant's domestic relations attorney about threats made by defendant.

II. *Evidence that Defendant Physically Abused a Former Wife.*

Defendant also seeks reversal of his conviction because the trial court permitted testimony by Vicki Schremm, a former wife of defendant, indicating he had beaten her during their marriage. He urges this evidence is inadmissible under the provisions of Iowa Rules of Evidence 404(a), (b). We agree.

■ The State offers two theories in support of the admission of evidence of defendant's physical abuse of Vicki Schremm. Its first theory of admissibility is that defendant's counsel opened the door for this testimony by cross-examining this witness concerning her dislike of defendant. During such questioning, the witness readily conceded that she disliked defendant. In drawing out the challenged evidence during cross-examination, the State was clearly not attempting to improve its position on this issue of witness bias. We do not believe the State should be permitted to introduce otherwise improper evidence which merely serves to reinforce a claim of witness bias made by the accused.

■ The second ground of admissibility suggested by the State is that the prior acts of violence were relevant to the issue of malice or absence of mistake. That claim appears to be untenable in view of the lack of temporal proximity of the challenged evidence to the events at issue in the trial. The marriage of defendant and Vicki Schremm terminated in 1978. As a result, the acts in question antedated the crime on trial by at least eight years.

■ More significantly, the challenged evidence is not such as will independently establish malice or lack of mistake with respect to the present crime. It only serves that purpose if it is viewed as establishing the type of propensity inference which Iowa Rule of Evidence 404(a) is designed to prevent. As we recognized in *State v. Barrett*, 401 N.W.2d 184, 187 (Iowa 1987):

> The language of the first paragraph of rule 404(a) suggests that its exclusionary ambit includes situations where the proponent of the evidence tenders it with the avowed purpose of establishing propensity based on character. We believe, however, that the exclusionary force of the rule applies equally to instances where the proponent offers the evidence for another avowed purpose, but the court determines that in fact its only relevancy is to illustrate the character of the accused for purposes of establishing other actions in conformity with that character.

The trial court erred in admitting this evidence.

III. *Harmless Error.*

■ Finally, we consider the State's contention that the errors in the admission of evidence which we have discussed in the prior divisions of this opinion are harmless errors. We disagree.

The State asserts the evidence of threats by defendant toward the victim was merely

cumulative of the testimony as to threats given by David Yochum and Edward May. Within the context of the present record, we believe the threats, made separately and at different points in time, each have an independent damning effect in building a case against defendant. Statements purportedly made by the victim to her attorney and by defendant to his attorney might be deemed particularly credible by the jury. The testimony of Yochum and May was to some extent impeached. Consequently, we view the admissibility of the challenged hearsay statements as sufficiently prejudicial to require reversal of defendant's conviction. This conclusion is buttressed by the fact that improper evidence was also received concerning defendant's physical abuse of his former wife.

For the reasons discussed, we vacate the decision of the court of appeals, reverse the judgment of the district court and remand this case to that court for a new trial.

DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT REVERSED AND REMANDED.