STATE of Iowa, Appellee,

v.

Daniel Brian HARRIS, Appellant.

No. 87–731.

Supreme Court of Iowa.

Feb. 22, 1989.

Raymond E. Rogers, Acting Appellate Defender, for appellant.

Thomas J. Miller, Atty. Gen., Christie J. Scase, Asst. Atty. Gen., E.A. Westfall, County Atty., and Drew Kouris and Timothy Markel, Asst. County Attys., for appellee.

Considered by HARRIS, P.J., and SCHULTZ, CARTER, NEUMAN, and ANDREASEN, JJ.

CARTER, Justice.

Defendant, Daniel Brian Harris, appeals from his conviction of first-degree murder in violation of Iowa Code sections 707.1 and 707.2 (1985). He makes three claims of error in arguing for reversal and a new trial. These are that the district court erred: (1) in overruling his motion for change of venue; (2) in overruling his motion to suppress evidence allegedly obtained as the product of a warrantless search; and (3) in overruling another motion to suppress evidence which, it is alleged, was obtained pursuant to an invalid search warrant. We consider each of these contentions and conclude that they provide

no basis for disturbing the judgment of the district court.

On Wednesday, December 31, 1986, the body of Kristina Nelson, a sixteen-year-old high school student, was discovered by two men looking for a fishing spot on the east bank of the Missouri River near Council Bluffs. Police officer Lyle Brown, who was called to the scene, observed a shoeprint in the sand approximately ten to fifteen feet from the body. Officer Brown also discovered a scarf of blue-gray color near the crime scene.

State Medical Examiner Thomas Bennett performed an autopsy on the body on January 1, 1987. He concluded that death resulted from ten stab wounds to the chest inflicted by an instrument with one blunt edge and one sharp edge. He further established that the victim had suffered a skull fracture, and neck contusions consistent with manual throttling. He estimated the time of death at sometime during the evening of December 30, 1986.

Evidence presented at the trial included two statements given to the police by the defendant. The first statement was given to officer Brown on January 4, 1987. At this time, defendant stated that he had known Kristina Nelson for two years and had last spoken to her in a telephone conversation sometime between December 28 and December 31. He told officer Brown that he had not seen Kristina Nelson in person since Christmas. Brown interviewed the defendant again on January 6. At this time defendant indicated that he had spoken with the victim by telephone on December 29 between 5 and 6 p.m. He said he had worked at the Burger King restaurant on the nights of December 29, 30, and 31 from 9 p.m. until 2 a.m. He again stated that he had not seen the victim personally since sometime prior to Christmas.

Three witnesses testified that they saw defendant with the victim on the evening of December 30. An inmate at the Pottawattamie County jail during the time that defendant was detained there awaiting trial testified that defendant told him that defendant's brother had sexually assaulted the victim and that, following this, defendant had cut her with a knife. This witness also testified that defendant had talked of taking a gold neck chain which the victim had been wearing.

Physical evidence obtained from defendant's residence pursuant to two search warrants included deck shoes with a shoeprint pattern similar to the one found at the scene of the crime and a gold neck chain (found in the personal effects of defendant's brother) which was identified by the victim's father as being similar to a chain worn by his daughter.

Vacuum sweepings from defendant's Mustang automobile produced fibers of the same diameter and color as those taken from the scarf found near the crime scene. The fibers were also chemically the same as those in the scarf. Other scientific evidence offered by the State included an analysis indicating human blood was present on defendant's deck shoes which was identified as group O PGM type 1+ 2+. The victim's blood was also determined to be group O PGM type 1+2+. Ten percent of the population has this type of blood.

The defendant called several alibi witnesses to account for his whereabouts on the evening of December 30, 1986. Among these was the assistant manager of the Burger King restaurant where defendant was employed. That witness testified that defendant had worked at the Burger King from 9 p.m. on December 30, 1986, until 1:30 a.m. on the following day.

Approximately forty-five newspaper articles concerning the Nelson murder were published in two locally read newspapers, the *Omaha World Herald* and the *Daily Nonpareil.* These articles indicated that defendant had also been arrested and charged with committing an unrelated rape which occurred in October of 1986. The articles described some circumstantial similarities between the October rape and Kristina Nelson's murder. These articles described some of the physical evidence later introduced at defendant's trial and other physical evidence which was not admitted at trial. Extensive press coverage

continued until approximately one month prior to the commencement of the trial. Defendant's motion for change of venue based on excessive pretrial publicity in Pottawattamie County was denied.

The case proceeded to jury trial on April 21, 1987, and on April 29, the jury found defendant guilty of first-degree murder in Kristina Nelson's death. Other facts material to the case on appeal will be discussed in connection with our consideration of the legal issues which are presented.

## I. Refusal to Grant Change of Venue.

■ The first issue on appeal concerns the trial court's refusal to grant defendant's motion for change of venue. Defendant asserts the intense media coverage of the crime and its investigation prevented the selection of a fair and impartial jury.

Iowa Rule of Criminal Procedure 10(10)(b) requires a trial court to grant a motion for change of venue if it determines that

such degree of prejudice exists in the county in which the trial is to be had that there is a substantial likelihood a fair and impartial trial cannot be preserved with a jury selected from that county....

To secure reversal of a conviction based on the denial of a change of venue, a defendant has the burden to show "either actual prejudice on the part of the jury or ... that the publicity attending the case was so pervasive and inflammatory that prejudice must be presumed." *State v. Spargo*, 364 N.W.2d 203, 207 (Iowa 1985). A trial court's decision rejecting a motion for change of venue will not be overturned unless this court finds an abuse of discretion. *State v. Wagner*, 410 N.W.2d 207, 210 (Iowa 1987).

The pretrial publicity in the present case was extensive, prolonged, contained some inaccurate information, and referred to some evidence not admitted at defendant's trial. Notwithstanding the circumstances which have been shown concerning this publicity, we do not find that the trial court abused its discretion in denying the motion for change of venue. In denying the motion, the court stated that it was in a position to "allow a careful selection of a local jury to insure the defendants receive a fair trial." The court's order indicated that voir dire would be transcribed and that it would reconsider the necessity of a venue change at the time of or following jury selection.

When defendant's motion for change of venue was renewed at the completion of jury selection, the court again denied the motion stating that "in [its] opinion it seem[ed] like jury selection went very well.... [W]e had a lot of uninformed people." This conclusion regarding jury selection is, we believe, supported by the record. Thirty-nine prospective jurors were questioned by counsel. Defendant challenged four jurors for cause. Only two of these challenges were based on exposure to pretrial publicity. All challenges for cause which the defendant lodged were sustained by the district court.

■ Exposure to news accounts does not by itself create a substantial likelihood of prejudice in the minds of prospective jurors. *State v. Johnson*, 318 N.W.2d 417, 422 (Iowa 1982); *State v. Lanscak*, 404 N.W.2d 192, 193 (Iowa App.1987). The crucial determination is whether, as a result of pretrial publicity or for other reasons, a substantial number of prospective jurors hold such fixed opinions on the merits of the case that they cannot impartially judge the issues to be determined at trial. *State v. Gavin*, 360 N.W.2d 817, 819 (Iowa 1985); *State v. Ware*, 338 N.W.2d 707, 713 (Iowa 1983); *State v. Nebinger*, 412 N.W.2d 180, 184 (Iowa App.1987). The reported voir dire questioning in the present case fails to indicate that this type of pervasive prejudice existed so as to poison the available pool of jurors. The motions for change of venue were properly denied.

## II. Evidence Obtained by Alleged Warrantless Search.

■ Defendant's first motion to suppress evidence was based on the contention that information contained in a search warrant application presented on January 13, 1987, was obtained from a prior warrantless search of defendant's residence. On

this aspect of the case, the investigating officers had concluded the shoeprint found at the crime scene resembled that made by a deck shoe. They later examined the sole patterns of different brands of deck shoes sold in the Omaha–Council Bluffs area. Several of the brands were found to have sole patterns similar to the print found near the victim's body.

On January 8, 1987, the police went to defendant's residence with an arrest warrant to be executed in connection with a different crime. They were admitted to the residence by defendant's father and went to a bedroom where the defendant was sleeping. They awoke defendant and took him into custody. In that process, one police officer observed a pair of deck shoes on the floor of the bedroom.

The officer moved nearer to the shoes in order to observe the brand label. He testified that he did not lean over because he was able to read the label inside the shoes while standing above the shoes and leaning against a dresser. The police subsequently obtained another pair of that brand of deck shoes to compare with the shoeprint in the sand. The degree of similarity provided one of the bases for formulating an application for a warrant to seize the shoes at defendant's residence. Defendant moved to suppress the evidence obtained with that warrant on the ground that the information presented to the magistrate was a fruit of the officer's earlier observation of defendant's shoes.

The motion to suppress asserted that the officer's visual observations constituted a warrantless search prohibited by the fourth amendment to the federal constitution. Defendant seeks to buttress this claim through reliance on *Arizona v. Hicks*, 480 U.S. 321, 107 S.Ct. 1149, 94 L.Ed.2d 347 (1987). We agree with the trial court that the *Hicks* decision does not support defendant's contentions that the officer's visual observations constituted a search. Indeed, language in that opinion suggests that the contrary is so.

In *Hicks,* police officers had entered an apartment to investigate a report that a bullet had been fired through the floor of that residence into the apartment below. While in the apartment for this purpose, they observed some expensive stereo equipment not in keeping with the apartment's decor. Suspecting that this was stolen property, one of the officers moved the equipment away from a wall in order to observe and record serial numbers on the back. The Court characterized that activity as a search for purposes of the fourth amendment. In so doing, it stated:

> We agree that the mere recording of the serial numbers did not constitute a seizure.... In and of itself ... it did not "meaningfully interfere" with respondent's possessory interest in either the serial numbers or the equipment, and therefore did not amount to a seizure....
>
> Officer Nelson's moving of the equipment, however, did constitute a "search" separate and apart from the search for [evidence of the discharge of a weapon]. *Merely inspecting those parts of the turntable that came into view during the latter search would not have constituted an independent search, because it would have produced no additional invasion of respondent's privacy interest....* But taking action, unrelated to the objectives of the authorized intrusion, which exposed to view concealed portions of the apartment or its contents, did produce a new invasion of respondent's privacy unjustified by the exigent circumstance that validated the entry.

480 U.S. at 324–25, 107 S.Ct. at 1152, 94 L.Ed.2d at 353–54 (emphasis added).

In the present case, the brand of defendant's shoes was ascertained by a visual inspection of objects which came into view during the officer's lawful activities. There was no movement of the shoes in order to expose any concealed portions. The trial court correctly denied defendant's motion to suppress based on a theory of warrantless search.

### III. *Validity of Search Warrant for Seizure of Gold Neck Chain.*

The final issue to be determined on this appeal concerns the validity of a search

warrant issued on January 23, 1987, for the search of defendant's residence. This warrant involved a search different from the January 13 search which produced defendant's deck shoes. The January 23 warrant related to a later search which produced the gold neck chain found in defendant's brother's personal effects. Defendant asserts the January 23 warrant was issued without probable cause and under invalid procedures.

The application for the January 23 warrant was initially presented to a district associate judge solely on the affidavit of police officer James Yopp. For purposes of showing the required nexus between the criminal activity, the place to be searched, and the things to be found, *see State v. Seager*, 341 N.W.2d 420, 427 (Iowa 1983), the factual assertions of the affidavit related entirely to hearsay statements of a confidential informant. These statements set forth certain admissions which the informant claims were made to him by the defendant during the time the informant and defendant were imprisoned in the Pottawattamie County jail. The subject of the admissions was defendant's statements that he had stabbed the victim and taken the gold chain.

Because the district associate judge to whom the warrant application was presented was less than satisfied with these hearsay averments, he asked that the informant be brought before him for questioning under oath. The informant was produced. After questioning the informant under oath, the district associate judge issued the warrant. The judge noted the informant's name on the warrant application along with that of the original affiant as one of the "persons upon whose sworn testimony the magistrate has relied to issue a warrant."[1]

■ Defendant claims that the warrant was issued without probable cause because there is nothing in the affidavit to establish the reliability of the informant. Defendant also challenges the warrant based on the magistrate's failure to make a specific find-

ing of informant credibility as required by Iowa Code section 808.3 (1987). Based on these premises, he asserts that evidence obtained by means of the warrant, including the gold chain, should not have been admitted at his trial.

In response to these contentions, the State urges that our decision in *State v. Weir*, 414 N.W.2d 327, 331 (Iowa 1987), obviates the need for a section 808.3 credibility finding because the informant's identity was revealed in the warrant papers. In *Weir*, the informant's identity was supplied in the State's application for a warrant. In the present case, it was supplied by the magistrate's endorsement of the informant's name as a person supplying information. Because we find the two situations to be indistinguishable for purposes of applying section 808.3, we hold that here, as in *Weir*, no specific credibility finding was required.

The application of the *Weir* holding does not completely answer defendant's challenge to the warrant, however. As we noted in *Weir*, the circumstances which obviate the need to comply with the specific credibility findings of section 808.3 do not relieve the State from establishing probable cause in some manner. Merely supplying the name of an informant will seldom have much bearing on this requirement. In the present case, the informant's hearsay statements were initially the only evidence offered to the magistrate for purposes of establishing probable cause.

■ We believe the decision in *Jones v. United States*, 362 U.S. 257, 269, 80 S.Ct. 725, 735, 4 L.Ed.2d 697, 707 (1960), establishes the principle that

an affidavit does not establish probable cause which merely states the affiant's belief that there is cause to search, without stating facts [known to the affiant] upon which that belief is based. *A fortiori* this is true of an affidavit which states only the belief of one not the affiant.... An affidavit is not to be

---

**1.** From this point on, the district associate judge who issued the search warrant will sometimes be referred to as "the magistrate."

deemed insufficient on that score, so long as a substantial basis for crediting the hearsay is presented. *Id.* Under the totality of circumstances test now applied in probable cause determinations, *see Weir,* 414 N.W.2d at 329–30, the reliability of hearsay statements by informants or others may not be essential if there is other nonhearsay evidence presented to the magistrate upon which to base a probable cause determination. If, however, hearsay statements provide the sole basis for the probable cause determination, some factual basis must be established for crediting the hearsay.

■ On the present record, had the informant's information been supplied solely by hearsay affidavit, the only factual corroboration was officer Yopp's personal knowledge, given under oath, concerning the informant's access to defendant at the Pottawattamie County jail. This circumstance gives some support to the informant's claim to have been in a position to hear the admissions which he says were made to him. Whether this minimal corroboration is sufficient to satisfy the fourth amendment need not be determined in the present case, however, for reasons which we will next discuss.

■ Our analysis of the requirement for corroboration of hearsay declarations used in probable cause determinations has been in response to certain of the arguments presented on this appeal. We now depart from that analysis, however, because we conclude that the informant evidence in the present case was not supplied as hearsay. The informant personally appeared before the magistrate and swore to the truth of the factual statements in officer Yopp's affidavit. Within the context of a criminal prosecution, a suspect's admission of guilt is not hearsay. *See State v. Williams,* 427 N.W.2d 469, 471 n. 1 (Iowa 1988). This is also true, we believe, with respect to pre-indictment warrant hearings conducted with regard to the investigation of a suspect. However, the informant's statements as to defendant's admissions, as originally presented to the magistrate in officer Yopp's affidavit, were hearsay. In that context, officer Yopp was the witness and the informant was the hearsay declarant.

■ Notwithstanding the circumstances prior to that time, once the informant appeared before the magistrate and, under oath, adopted the statements attributed to him in the Yopp affidavit, those statements ceased to be hearsay; they became the sworn testimony of a witness with personal knowledge of the facts. The evidence of defendant's admissions, if found to be credible, was clearly sufficient to establish probable cause for issuance of the warrant. The magistrate was, we believe, entitled to judge the informant-witness's credibility under ordinary standards of witness demeanor. The fact that the warrant was issued indicates, quite conclusively, that the magistrate was satisfied with the witness's credibility. Defendant's challenge to the January 23 warrant must be rejected.

■ The defendant contends that in reviewing the probable cause finding we may not consider any of the circumstances involving the informant's personal appearance before the magistrate. Consideration of such evidence is precluded, he asserts, by our decision in *State v. Liesche,* 228 N.W.2d 44, 48 (Iowa 1975), requiring that all evidence relied on in issuing a search warrant must be shown on the search warrant application or abstracted by the magistrate. We do not find that *Liesche* defeats the analysis contained in the preceding paragraph.

The *Liesche* doctrine only precludes the supplying of new facts at a suppression hearing which were not abstracted by the magistrate or contained in the affidavits supporting the warrant application. In the present case, all of the facts relied upon by the magistrate were in the affidavit supplied with the warrant application. The act of listing the informant as an additional witness indicated quite clearly, we believe, that the informant had sworn to the truth of the statements attributed to him in officer Yopp's affidavit. The additional testimony taken from the magistrate at the suppression hearing only served to corroborate that which was already to be inferred

from the record. Given these circumstances, we conclude that this procedure did not violate the *Liesche* restrictions.

We have considered all arguments presented and find no basis for reversing the judgment of conviction. The judgment of the district court is affirmed.

AFFIRMED.