# IN THE COURT OF APPEALS OF IOWA

No. 18-0181
Filed October 7, 2020

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**NICOLE MARIE FINN,**
        Defendant-Appellant.
_____

Appeal from the Iowa District Court for Polk County, Karen A. Romano,
Judge.


Nicole Finn appeals her convictions for one count of first-degree murder and
three counts of first-degree kidnapping. **AFFIRMED.**


Nicholas B. Dial of Dial Law Office, P.C., West Des Moines, for appellant.

Thomas J. Miller, Attorney General, and Martha E. Trout, Assistant Attorney
General, for appellee.


Considered by Vaitheswaran, P.J., and Mullins and Ahlers, JJ.

**VAITHESWARAN, Presiding Judge.**

A boy called 911 and told the dispatch shift supervisor that his sister was not breathing.  A West Des Moines police officer went to the house to assist.  She discovered Nicole Finn performing chest compressions on her "very thin, very frail" teenage daughter, in a room stripped of furniture and carpeting.  The teen's body temperature was "[c]old."  The teen was taken to a hospital, where an emergency room physician expressed "shock[ ] at her appearance."  In the physician's words, the teen "was just emaciated, wasted away."  She testified that hospital staff "tried everything that [they] could to try to save her," but the teen died four hours later.

Three other children lived in Finn's home.  Two of them were also hospitalized.  One was described as "pale" and "thin," with "several wounds that weren't healing properly" and "swollen" arms and legs.  The other was similarly described as "very skinny," with "big and swollen" legs, and "nothing to him basically."  The fourth child was relatively healthy and was sent to his father's home.

The State charged Finn with several crimes arising from the treatment of the three hospitalized children.  A jury found her guilty of one count of first-degree murder and three counts of first-degree kidnapping.  The district court merged the sentences for murder and the kidnapping count involving the child who died, ran those sentences concurrently with each other, and ordered Finn to serve three consecutive terms of life in prison.

On appeal, Finn (1) challenges the sufficiency of the evidence to support the findings of guilt on "each kidnapping charge"; (2) argues the district court improperly instructed the jury on the meaning of a term used in the marshalling

instruction for kidnapping; (3) contends the district court abused its discretion in denying her motions for change of venue; (4) argues the district court abused its discretion in denying her motions to strike three jurors for cause; and (5) contends her trial attorneys were ineffective in failing to object to a jury instruction that "assume[d] the existence of facts disputed in the record."

## I.    Sufficiency of the Evidence

The jury was instructed the State would have to prove the following elements of first-degree kidnapping:

> On or about December 1, 2015, through October 25, 2016, the defendant confined or removed [the child].
> 1. The defendant did so with the specific intent to:
>     a. Inflict serious injury upon [the child], and/or
>     b. Secretly confine [the child].
> 2. The defendant knew she did not have the consent or authority of [the child] to do so.
> 3. As a result of the confinement or removal [the child]
>     a. Suffered a serious injury, and/or
>     b. Was intentionally subject to torture.

The crime of kidnapping also was included in the first-degree murder marshalling instruction as an alternative means of satisfying one of the elements.

Finn argues "confinement does not exist" under the first kidnapping element. In her view, "The three children lived in the same room of their house," "[t]he children left the room on a regular basis," "[t]he children also left the house," and "[t]he room was alarmed, but not locked." We address this issue first because, if the evidence is insufficient to support the findings of guilt, double jeopardy would mandate reversal. *See State v. Dullard*, 668 N.W.2d 585, 597 (Iowa 2003) ("Normally, when error occurs at trial resulting in a reversal of a criminal conviction on appeal, double-jeopardy principles do not prohibit a retrial. An exception exists,

however, when the defendant's conviction is reversed on grounds that the evidence was insufficient to sustain the conviction.").

The jury was instructed on the meaning of confinement as follows:

> A person is "confined" when her or his freedom to move about is substantially restricted by force, threat or deception. The person may be confined either in the place where the restriction began or in a place to which she or he has been removed. No minimum time of confinement or distance of removal is required. It must be more than slight. The confinement and/or removal must have significance apart from the infliction of serious injury or torture.
> In determining whether confinement and/or removal exists, you may consider whether:
> 1. The risk of harm to the person confined was substantially increased.
> 2. The risk of detection was significantly reduced.
> 3. Escape was made significantly easier.

A reasonable juror could have found the following facts relative to the confinement element.

The fourth child testified that the three children who were named in the kidnapping charges slept in a single room. The children were not allowed to use the bathroom without Finn's permission and with supervision by her or by the fourth child. The children started "going to the bathroom" in the bedroom. Finn removed the beds and carpeting when "it started to smell really bad." Finn also nailed the bedroom window shut to prevent the children from "sneaking out" and "[a]sking for money and food." To alert her that someone had opened the bedroom door, she placed "a laundry basket with a pillow case tied to it and pillow case tied to the door." Later, Finn fitted the bedroom door with an alarm that beeped when the door was opened.

One of the children who was restricted to the room testified "we weren't allowed to do very much." He stated, "It was very rare [he] came out of [his] room

in the summer." In his words, "since we were in the room almost like the whole entire day sometimes, we had nowhere to go." The three children "had to ask" to go to the bathroom "from inside the room." Because Finn did not come if she was busy or sleeping, they went "to the bathroom everywhere in the room." The children also had to ask for "something to eat." When they received food, they had to hold it and stand against a hallway wall while eating. About once a week, they "would have to ask for everything [they] needed," and "then [they] would be able to have privileges to go outside the room." The child confirmed the placement of an "alarm on the door." He also confirmed that the window was nailed shut and, later, reinforced with small and large screws and "boards on the outside." The reinforcements prevented the children from leaving through the window to get food.

Substantial evidence supports the jury's finding that the three children's "freedom to move about [was] substantially restricted by force, threat or deception" and that they were "confined" within the meaning of the kidnapping instruction. *See State v. Siemer*, 454 N.W.2d 857, 864 (Iowa 1990) (finding sufficient evidence of confinement where a child handcuffed to a bed in the basement "was unable to fulfill any of his most basic human needs such as relieving himself in a sanitary way or reaching food or water"); *cf. State v. Albright*, 925 N.W.2d 144, 155 (Iowa 2019) (affirming finding of guilt for kidnapping where a person was confined "for over thirteen hours" and stating "[t]his was not a 'minimal degree of confinement'" (citation omitted)).

We affirm the jury's findings of guilt on the three kidnapping counts and on the kidnapping alternative to the first-degree murder count.

Finn putatively raises a claim that the jury's finding of guilt was against the weight of the evidence. Our review of the district court's denial of a new trial motion on this ground is for an abuse of discretion. *See State v. Neiderbach*, 837 N.W.2d 180, 190 (Iowa 2013). The standard is "more stringent than the sufficiency-of-the-evidence standard." *State v. Ary*, 877 N.W.2d 686, 706 (Iowa 2016).

The district court cited the stringent standard in denying the motion, stating "the court should exercise its power to grant a new trial when the verdict is contrary to the weight of the evidence, but only in the extraordinary case in which the evidence preponderates heavily against the verdict rendered." The court concluded "the evidence does not preponderate heavily against the verdict and . . . the verdict is not contrary to the weight of the evidence." We discern no abuse of discretion in the court's ruling.[1]

## II.     Jury Instruction – First-Degree Kidnapping

As noted above, the kidnapping instruction required proof "[t]he defendant knew she did not have the consent or authority of [the child] to" confine or remove the child. The jury received an instruction on the meaning of authority, as follows:

> The term "authority" does not include acts which constitute undue severity, cruelty, cause serious injury or subject one to torture.
> A parent has the authority to confine or remove a minor under reasonable circumstances within the limitations of moderation and reasonableness.
> In determining the reasonableness of the defendant's acts, you may consider the age, physical condition and other characteristics of the minor; the gravity of the misconduct; the amount and nature of the defendant's acts; and whether the

---

[1] The district court made brief mention of "the sufficiency of the evidence standard," but it is clear from the court's entire discussion, including citations to several opinions, that the court applied the correct weight-of-the-evidence standard.

defendant's acts were corrective rather than to satisfy the anger of the defendant.

The term "minor" means any person under the age of eighteen (18).

Finn objected to the instruction on the ground that it was a "compilation of different instructions which don't actually apply to kidnapping or to confining" and the instruction added "words that lead the jury to reaching a conclusion about the term authority . . . that . . . invades the province of the jury." The district court overruled the objection, reasoning that the instruction was "necessary and . . . an accurate statement of the law to help the jury understand what the term authority means in the context of the three counts of kidnapping in the first-degree" and, specifically, "the limits of parental authority."

On appeal, Finn contends the instruction "violates the constitutional prohibition on presumptions." This argument was neither raised nor addressed. Accordingly, we decline to consider it. *See State v. Krogmann*, 804 N.W.2d 518, 523 (Iowa 2011) (stating the defendant "had to alert the district court to his specific objections, and he had to do so in a timely manner"); *Olson v. Sumpter*, 728 N.W.2d 844, 848–49 (Iowa 2007) ("The objecting party must specify [ ] the matter objected to and on what grounds. The objection must be sufficiently specific to alert the trial court to the basis of the complaint so that if error does exist the court may correct it before placing the case in the hands of the jury." (citations and internal quotation marks omitted)).

Finn also argues the instruction misstated the law. Although the State asserts this argument also was not preserved for review, we believe counsel's objection encompassed the assertion, as well as her third assertion that the

instruction "confuse[d] the issues and mis[led] the jury." Accordingly, we will address the merits of those two claims.

In approving the instruction on the meaning of authority, the district court considered *State v. Siemer*, 454 N.W.2d 857, 862 (Iowa 1990), a case strikingly similar to this one. There, the supreme court concluded "parents may not hide behind the guise of authority to escape punishment for conduct that is proscribed for all others by the kidnapping statute." *Siemer*, 454 N.W.2d at 863. The court reasoned, "While a parent has the authority to confine or remove a child under reasonable circumstances, we can conceive of no circumstance under which a parent could lawfully exercise such authority while harboring the intent to . . . subject the child to serious injury." *Id.* at 864.

The first two sentences of the "authority" instruction were drawn directly from the holding of *Siemer*. As for the factors listed in the instruction, they were drawn from Iowa Criminal Jury Instruction 2610.8 on unreasonable force in the child endangerment context. Neither the factors nor the language preceding it "unduly emphasize[d] terms in a manner which point[ed] the jury to a particular outcome," as Finn contends. To the contrary, we agree with the district court that the instruction simply clarified the limits of parental authority in the kidnapping context. We conclude the court did not err in giving the instruction. *See State v. Ambrose*, 861 N.W.2d 550, 554 (Iowa 2015) (setting forth standard of review).

## III.    *Change of Venue*

Finn filed a motion for change of venue based on pretrial publicity in the Des Moines area. The district court afforded Finn time to survey potential jurors about their knowledge of the case. After receiving the survey responses, the court

denied the motion. The court found that media coverage had "dissipated with time" and much of the coverage focused on the claimed failings of a State agency. The court noted that "77% of the potential jurors responded that they could be fair and impartial jurors" and "a detailed juror questionnaire" could ferret out "a strong bias or prejudice against" Finn. The court concluded there was no showing "of substantial prejudice" and ordered the trial to go forward in Polk County.

Several months later, Finn renewed her motion. At a hearing, one of her attorneys asserted that "the media onslaught ha[d] continued" and had become "more provocative." The district court again denied the motion.

On appeal, Finn contends, "The evidence presented clearly shows the indefatigable and pervasive reporting of the case." In her view, "The case should . . . be reversed and remanded on all counts."

"Reversal is warranted only where the trial court's decision demonstrates an abuse of discretion." *State v. Newell*, 710 N.W.2d 6, 33 (Iowa 2006) (citation omitted). The touchstone of the decision is whether "the court is satisfied from a motion for a change of venue and the evidence introduced in support of the motion that such degree of prejudice exists in the county in which the trial is to be held that there is a substantial likelihood a fair and impartial trial cannot be preserved with a jury selected from that county." Iowa R. Crim. P. 2.11(10)(b). "Exposure to news accounts does not by itself create a substantial likelihood of prejudice in the minds of prospective jurors." *State v. Harris*, 436 N.W.2d 364, 367 (Iowa 1989). Nor is the "inflammatory nature of pretrial publicity . . . the sole focus of a court in ruling on a motion for change of venue." *State v. Nebinger*, 412 N.W.2d 180, 184 (Iowa Ct. App. 1987). "The crucial determination is whether, as a result of pretrial

publicity or for other reasons, a substantial number of prospective jurors hold such fixed opinions on the merits of the case that they cannot impartially judge the issues to be determined at trial." *Harris*, 436 N.W.2d at 367. "[J]ury voir dire should be trusted to expose any substantial prejudice among potential jurors." *Nebinger*, 412 N.W.2d at 185).

The district court followed these precepts. After finding that the original motion lacked evidentiary support, the court delayed a ruling pending dissemination of questionnaires to potential jurors. On obtaining the responses, the court considered "the degree of prejudice in the county," as required by Iowa Rule of Criminal Procedure 2.11(10)(d).

The court revisited the issue several months later. At that time, the court acknowledged the media attention given to the case as well as comments by public figures. Some of the publicity cited by the defense was indeed inflammatory. *See id.* at 184 (stating "a number of the comments made by the program moderator and callers were, in fact, inflammatory"); *cf. State v. Walters*, 426 N.W.2d 136, 139 (Iowa 1988) ("But the record does not disclose, as defendant would have it, sensational reporting of a routine crime. Rather, there was routine reporting of a sensational crime."). But, to the extent the information came through the sharing of websites and social media, the court stated "they're going all over the state" and "the same concerns" in selecting a jury in Polk County "would exist in another county." The court denied the motion a second time, leaving open the option of changing venue if it appeared that a fair and impartial jury could not be drawn after reviewing juror questionnaires. *See Harris*, 436 N.W.2d at 367 (finding no abuse of discretion in denial of change-of-venue motion where "[t]he court's order

indicated that voir dire would be transcribed and that it would reconsider the necessity of a venue change at the time of or following jury selection").

The court next convened 314 prospective jurors. The parties and the district court took pains to question those whose questionnaire responses triggered concerns, asking relevant questions about exposure to pretrial publicity and whether the exposure affected their ability to fairly assess the evidence. The fact that 146 of the individuals were excused for cause is a testament to the importance placed on the voir dire process.

Finn nonetheless contends the dismissal of so many jurors calls into question the State's "vaunted" statistics on impartiality. But she does not quantify the prospective jurors who were exposed to pretrial publicity and the percentage of those individuals who, in her view, could not act impartially in the face of the publicity. On this record, we conclude the district court did not abuse its discretion in denying the new trial motions.

## IV.     *Denial of Motion to Strike Jurors*

Finn next contends the district court abused its discretion in denying her motion to strike three jurors for cause. *See State v. Jonas*, 904 N.W.2d 566, 570 (Iowa 2017) (setting forth standard of review). The issue is governed by Iowa Rule of Criminal Procedure 2.18(5)(k), which permits a for-cause challenge where a juror has "formed or expressed such an opinion as to the guilt or innocence of the defendant as would prevent the juror from rendering a true verdict upon the evidence submitted on the trial."

Finn begins with Juror 36. In her view, the juror should have been removed for cause because he "expressed sadness" when "his wife spoke to him about the

events of this case" and because he was "married to someone who work[ed] at the shelter where one of the children was residing."

The district court denied Finn's challenge, reasoning "[t]here is absolutely no indication that [a] connection was ever made" with the child's stay at the shelter. The court noted that when "the question was asked whether [Juror 36] and his wife talked about residents at [the shelter,] he indicated no." We discern no abuse of discretion in the court's ruling, particularly in light of Juror 36's expressed belief that he could "keep an open mind."

The same holds true for Juror 51, who Finn also challenged for cause. Although he "read some articles" about the case, he did not believe any of the outside information would affect his ability to sit impartially if called as a juror.

We are left with Juror 76, who saw "an alert" about the case on her news feed. She was asked "[w]hat, if any, impact" that had on jury service. She responded, "It doesn't affect me, I don't think. I don't know really anything about the case." She specifically denied receiving enough outside information to have formed an opinion about the child's death. She stated she "would . . . be as fair as" she could, notwithstanding the fact she had children around the same age as Finn's children, because Finn "deserve[d] a fair trial."

We are persuaded that none of the three challenged jurors expressed an opinion about the guilt of Finn. For that reason alone, the district court did not abuse its discretion in denying Finn's three challenges for cause. In light of our conclusion, we need not address the State's argument that the rulings were non-prejudicial. *See State v. Doorenbos*, No. 19-1257, 2020 WL 3264408, at *7 (Iowa Ct. App. June 17, 2020).

*V.     Ineffective Assistance – Failure to Object to Jury Instruction*

Finn contends her attorneys were ineffective in failing to challenge the following jury instruction: "The defendant's actions in starving [one of the children] resulted in the death of [the child] if those actions caused or directly contributed to [the child's] death."  In her view, the instruction assumed a fact not in evidence, namely starvation, which was an element the State had to prove.[2]  We find the record adequate to address the issue.  *See Kuhse*, 937 N.W.2d at 627 ("[W]e will decide whether the appellate record is adequate to determine the claim.").  Finn must establish deficient performance and prejudice.  *See Strickland v. Washington*, 466 U.S. 668, 687 (1984).

We assume without deciding that counsels' failure to object to the instruction amounted to deficient performance.  On our de novo review of the record, we are persuaded that the claim fails on the prejudice prong.  Specifically, the State presented overwhelming evidence that Finn starved her child.  *See State v. Lorenzo Baltazar*, 935 N.W.2d 862, 872 (Iowa 2019) (rejecting prejudice prong of ineffective-assistance claim where evidence was overwhelming).  Accordingly, there is no reasonable probability the result would have been different had counsel

---

[2] The supreme court recently stated:
> Although the Iowa Code no longer permits claims of ineffective assistance of counsel to be decided on direct appeal, *see* 2019 Iowa Acts ch. 140, § 31 (to be codified at Iowa Code § 814.7 (2020)), we held in *State v. Macke*, that this provision 'do[es] not apply to a direct appeal from a judgment and sentence entered before July 1, 2019.' 933 N.W.2d 226, 228 (Iowa 2019).  Because the judgment and sentence here were entered before July 1, 2019, we are not foreclosed from considering [the defendant's] claim of ineffective assistance.

*State v. Kuhse*, 937 N.W.2d 622, 627 (Iowa 2020) (alteration in original).

challenged the jury instruction. *See Kuhse*, 937 N.W.2d at 628 ("The crux of the prejudice component rests on whether the defendant has shown 'that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" (citation omitted)); *State v. Asbury*, No. 17-0117, 2018 WL 4635683, at *5 (Iowa Ct. App. Sept. 26, 2018) ("Even if the instructions had been crafted in a more fact-neutral fashion, there is no reasonable probability the jury's verdict would have been different.").

We affirm Finn's judgment and sentence.

**AFFIRMED.**