**STATE of Iowa, Appellee,**

v.

**Bobby Gene SYKES, Appellant.**

No. 86–975.

Supreme Court of Iowa.

Sept. 23, 1987.

John W. Ackerman, Waterloo, for appellant.

Thomas J. Miller, Atty. Gen., Lona Hansen, Asst. Atty. Gen., and Thomas J. Ferguson, Asst. Co. Atty., for appellee.

Considered by REYNOLDSON, C.J., and McGIVERIN, LARSON, SCHULTZ and LAVORATO, JJ.

McGIVERIN, Justice.

Defendant Bobby Gene Sykes appeals his conviction of possession with intent to deliver a controlled substance in violation of Iowa Code section 204.401(1)(b)(1985). He raises issues concerning the issuance of a search warrant and the sufficiency of evidence of probable cause for his arrest. In addition, he challenges the execution of the search warrant, the admission of testimony of an expert witness on the methods of drug dealers, and the trial court's denial of his motion for judgment of acquittal. Finding no merit in defendant's contentions, we affirm.

I. *Background facts and proceedings.* On September 9, 1985, officer Jack Stainbrook of the Waterloo police department's special enforcement unit on narcotics and vice arrested the defendant, Bobby Gene Sykes, for possession with intent to deliver a controlled substance in violation of Iowa Code section 204.401(1)(b). The officer conducted a search incident to arrest and found four small, individually wrapped baggies of marijuana on Sykes's person. Marijuana is a controlled substance. Iowa Code §§ 204.101(6); 204.206(7) (Schedule II). The arrest culminated a three- to four-month investigation into Sykes's activities as a suspected drug dealer.

According to officer Stainbrook's affidavit supporting a search warrant application and his later trial testimony, the late summer months of 1985 yielded substantial evidence of Sykes's involvement in drug trafficking. During July 1985, the Waterloo police department received six reports that Sykes was dealing drugs out of a red 1984 Chevrolet Corvette automobile on the corner of East Fourth and Adams streets.

Stainbrook's affidavit attributed these reports to sources ranging from reliable confidential informants to an anonymous letter. Two "controlled buys" from Sykes had been observed earlier by Waterloo police officers at the same corner, one in February and one in April. In August, the special enforcement unit arranged three more controlled buys during which police officers observed confidential informants purchase marijuana from Sykes with money provided by the police. Each sale occurred at the corner of East Fourth and Adams streets, and four of the five sales were made out of Sykes's red Corvette. The fifth sale was made out of a red Chevrolet Camaro also belonging to Sykes. Stainbrook noted during these surveillance operations that numerous people were observed approaching Sykes's car, making brief contact with him, and then walking away placing something either in their sock or pocket.

While on roving patrol in August, an investigator with the special enforcement unit noticed Sykes parked at the corner of East Fourth and Adams, this time in a white 1981 Volkswagen Rabbit automobile. He saw Sykes hand what appeared to be a small, clear plastic bag containing marijuana to a male subject leaning into Sykes's car. On the morning of September 9, an additional confidential report concerning Sykes was received from a "respected member of the community." The report detailed a contact between Sykes and another individual seen entering Sykes's garage with a covering and leaving with the covering concealing a bulky item. The report also noted that Sykes spent an inordinate amount of time in his garage.

On September 6 and again on September 9, Sykes was placed under surveillance as he left his residence in his white 1981 Volkswagen Rabbit and was followed to the corner of East Fourth and Adams where he parked. On both dates a brown 1972 Pontiac Grand Prix automobile, owned and driven by his brother, also left Sykes's residence. After taking different routes, both automobiles arrived at the same corner, were approached by numerous individuals, and brief contacts were observed.

Having established this pattern on September 9, the police proceeded to arrest both defendant and his brother.

Following the arrests, officer Stainbrook applied for a search warrant to search Sykes's residence and garage or garages, his person, and the automobiles driven by the defendant and his brother that morning. The issuing magistrate, presented with the above facts in officer Stainbrook's affidavit and the marijuana found on Sykes's person, determined that probable cause existed. He issued a warrant authorizing the search of Sykes's residence, any attached or unattached garage or garages, and the two automobiles the suspects had driven that morning. Both automobiles were impounded after Sykes and his brother were arrested.

The search of Sykes's residence produced evidence to indicate he was actively involved in the sale of controlled substances, but only a moderate quantity of marijuana was found. While the search of Sykes's house was proceeding under officer Stainbrook's direction, sergeant Gunderson and officer Marshall obtained Sykes's keys from him and began searching the garages Sykes had use of behind his residence. Inside the garages were a red 1984 Corvette and a brown 1973 Pontiac Grand Prix automobile. Neither car was listed in the search warrant.

The Corvette was not locked and its sunroof panels were off. Looking into the car, sergeant Gunderson noticed marijuana paraphernalia. After a brief search, he seized the car and drove it to the sheriff's impound lot. Gunderson later applied for and obtained a separate search warrant to search the Corvette thoroughly.

The Grand Prix could not be driven because of a flat rear tire. The car was locked and officer Marshall used Sykes's keys to open it. A subsequent search of the passenger and engine compartments produced several items of evidence and almost three and one-half pounds of marijuana.

Before trial, defendant filed a motion in limine and a motion to suppress evidence.

The motion in limine sought to exclude any testimony by officer Stainbrook as an expert witness on illegal drug sales patterns in Waterloo. Ruling was withheld until a foundation could be laid at trial. The motion to suppress originally sought to exclude any evidence found in the Corvette and the 1973 Pontiac which were not listed on the original search warrant. In amended form, the motion sought to bar any evidence found pursuant to either warrant. The motions ultimately were overruled.

We next discuss the issues raised on appeal by defendant.

■ II. *Whether probable cause existed for defendant's arrest.* Defendant first contends he was arrested without probable cause on the charge of possession with intent to deliver a controlled substance. If he is correct, the marijuana found on his person when he was arrested would have been seized illegally and could not have been admitted at trial or used to bolster the evidence of probable cause in the search warrant application. *Wong Sun v. United States,* 371 U.S. 471, 484–85, 83 S.Ct. 407, 415–16, 9 L.Ed.2d 441, 453–54 (1963) ("fruit of the poisonous tree" doctrine); *State v. Ahart,* 324 N.W.2d 317, 318 (Iowa 1982).

This assertion appears to have been raised for the first time on appeal. The Iowa Rules of Criminal Procedure require motions to suppress evidence based on illegal seizure of that evidence to be raised prior to trial. Iowa R.Crim.P. 10(2)(c). Failing to raise a timely objection constitutes waiver of the objection. Iowa R.Crim.P. 10(3). In his pretrial motion to suppress, defendant never challenged the validity of his arrest. The motion only sought to limit the arresting officer's testimony concerning circumstantial evidence challenged by the defendant as prejudicial. Defendant's motion to suppress was later amended, but the amended version challenged only the evidence seized pursuant to the search warrants issued after the arrest.

Defendant also failed to object at trial to testimony concerning his arrest. Under the Iowa Rules of Evidence, error cannot be predicated on a ruling admitting evidence unless a timely objection is made. Iowa R.Evid. 103. "It is a basic rule of appellate practice that questions not presented to and not passed on by the trial court cannot be raised or reviewed on appeal." *Shill v. Careage Corp.,* 353 N.W.2d 416, 420 (Iowa 1984).

Having failed to preserve this issue for review, defendant is precluded from raising it now.

III. *Propriety of issuance of the search warrant.* Defendant attacks the validity of the warrant which allowed the search of his residence, garages and automobiles on several grounds. In reviewing defendant's claims, we operate under well-established principles. There is a preference for warrants and we construe them in a commonsense manner, resolving doubtful cases in favor of their validity. *State v. Bishop,* 387 N.W.2d 554, 559 (Iowa 1986). Our review is to determine whether there is substantial basis for concluding that probable cause existed. *State v. Luter,* 346 N.W.2d 802, 808 (Iowa 1984). With these rules in mind, we discuss defendant's claims in turn.

■ A. *Magistrate's determination of informants' credibility.* Defendant's first attack on the warrant's validity states that the issuing magistrate failed to endorse his satisfaction with the informants' reliability on the warrant as required by Iowa law. Iowa Code section 808.3 (Supp.1985) provides in part:

> [I]f the grounds for issuance [of a search warrant] are supplied by an informant, the magistrate shall identify only the peace officer to whom the information was given but shall include a determination that the information appears credible either because sworn testimony indicates that the informant has given reliable information on previous occasions, or because the informant or the information provided by the informant appears credible for reasons specified by the magistrate.

Defendant argues that the issuing judge failed to follow this requirement.

Reports from confidential informants were listed on officer Stainbrook's affidavit

in support of the warrant application. The State argues that the magistrate's signature on the bottom of officer Stainbrook's affidavit is sufficient to satisfy that requirement. In *State v. Sheridan*, 247 N.W.2d 232 (Iowa 1976), *cert. denied*, 431 U.S. 929, 97 S.Ct. 2631, 53 L.Ed.2d 244 (1977), we held that a magistrate's signature at the bottom of an instrument indicated adoption and approval of the instrument giving it "the same force and effect as if [the magistrate] had personally prepared the same." 247 N.W.2d at 233.

Under the portion of his affidavit in support of the warrant entitled "Reason For Reliability of This Informant and/or Corroboration," officer Stainbrook included the following:

> The several informants used in completing the controlled buys from Bobby Sykes were corroborated by each other as well as the surveillance done during the time of the confidential informant buys as well as other surveillances conducted by officers of the Special Enforcement Unit of the Waterloo Police Department.

By signing at the bottom of officer Stainbrook's affidavit, we conclude the issuing magistrate adopted Stainbrook's statements that the confidential informants were reliable and that their accounts were mutually corroborating. In this way the magistrate made the determination required by Iowa Code section 808.3 that the information provided by the informants appeared credible.

Defendant's contention that the warrant does not comply with state law lacks merit.

B. *Necessity for verification of the basis of knowledge and credibility of confidential informants.* Closely related to his argument above, defendant also asserts error in the issuing magistrate's failure to ascertain the bases of knowledge and the histories of reliability of the informants relied upon by the police. This argument is based upon a line of United States Supreme Court cases developing the fourth amendment requirements for a search warrant when probable cause is based upon information from confidential informants. *See*

*Spinelli v. United States*, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969); *Aguilar v. Texas*, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964).

Under *Spinelli* and *Aguilar*, the issuing magistrate must be informed of facts (1) from which the informant reached his conclusions and (2) from which the affiant concluded the informant was reliable. *State v. Bousman*, 387 N.W.2d 605, 610 (Iowa 1986). However, as this court has noted, *see, e.g., State v. Bishop*, 387 N.W.2d 554, 557 (Iowa 1986); *State v. Luter*, 346 N.W.2d 802, 807–08 (Iowa), *cert. denied*, 469 U.S. 830, 105 S.Ct. 116, 83 L.Ed.2d 59 (1984), and as the defendant acknowledges, the Supreme Court expressly abandoned the traditional two-prong *Aquilar-Spinelli* test for determining the reliability of confidential informants in favor of the "totality of the circumstances" test. The Supreme Court stated:

> For all these reasons, we conclude that it is wiser to abandon the "two-pronged test" established by our decisions in *Aguilar* and *Spinelli*. In its place we reaffirm the totality of the circumstances analysis that traditionally has informed probable cause determinations. The task of the issuing magistrate is simply to make a practical, common-sense decision, whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.

*Illinois v. Gates*, 462 U.S. 213, 238, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527, 548, *reh'g denied*, 463 U.S. 1237, 104 S.Ct. 33, 77 L.Ed.2d 1453 (1983); *see also Massachusetts v. Upton*, 466 U.S. 727, 732, 104 S.Ct. 2085, 2087, 80 L.Ed.2d 721, 726–27 (1984).

Defendant asserts, however, that these prongs—the basis of an informant's knowledge and the informant's record of reliability—are still important considerations. He argues that the warrant, evidencing no consideration of these questions, is invalid.

If the probable cause determination of the original search warrant turned

solely upon the information provided by the confidential informants, defendant's argument might carry more weight. Here, however, the probable cause finding also rested on the personal observations of Waterloo police officers. While confidential informants were used to purchase drugs from Sykes, each purchase was closely observed by various officers including the affiant Stainbrook. This happened not once, but five times. Although officer Stainbrook did not personally observe each sale, he was entitled to accept as reliable the reports made by fellow officers observing these sales. *State v. Hall*, 259 Iowa 147, 152, 143 N.W.2d 318, 321 (1966); *see United States v. Ventresca*, 380 U.S. 102, 110, 85 S.Ct. 741, 747, 13 L.Ed.2d 684, 690 (1965).

Defendant's reliance on *Gates* for the proposition that an informant's basis of knowledge and reliability are still relevant misses the mark. The real lesson of *Gates*, as this court has stated before, is that all of the circumstances must be considered. Given the information before him, including officer Stainbrook's affidavit concerning the observations of other police officers, it was not essential to the validity of the search warrant that the issuing magistrate assess the veracity or basis of knowledge of the informants. The information from the informants used in controlled buys was personally witnessed by Waterloo police officers. The confidential reports of Sykes's drug selling activities from informants concerning sales not viewed by the police were merely corroborating evidence to further support probable cause and were only a portion of the "totality of the circumstances" that the magistrate was authorized to rely upon. *Gates*, 462 U.S. at 238, 103 S.Ct. at 2332, 76 L.Ed.2d at 548.

Thus, even though the reliability and basis of knowledge of informants can still be relevant considerations for determining probable cause under *Gates*, defendant's contention that these considerations were required or controlling lacks merit under this record.[1]

■ C. *Sufficiency of evidence of probable cause.* Defendant also contends there was insufficient evidence of probable cause gathered from his sales activity to justify a search of his residence. He points out that no sales were witnessed at his residence nor did any investigation center around his home.

An Iowa magistrate reviewing a search warrant application need only look for "facts, information and circumstances tending to establish sufficient grounds for granting the application, and probable cause for believing that grounds exist." Iowa Code § 808.3. The oft repeated test of probable cause is whether a person of reasonable prudence would believe a crime was being committed on the premises to be searched or evidence of a crime could be located there. *State v. Woodcock*, 407 N.W.2d 603, 604 (Iowa 1987); *State v. Seager*, 341 N.W.2d 420, 426–27 (Iowa 1983); *State v. Oliveri*, 261 Iowa 1140, 1143, 156 N.W.2d 688, 690 (1968), *cert. denied*, 393 U.S. 1030, 89 S.Ct. 640, 21 L.Ed.2d 573 (1969). The test highlights the need for a nexus between the crime to be committed, the things to be seized, and the place to be searched. *Seager*, 341 N.W.2d at 427; Iowa Const. art. I, § 8 (specificity of search warrants).

The magistrate explained the information he relied upon to find that nexus on the back of the original warrant form. He cited the evidence of repeated drug sales, coupled with the evidence of activity in Sykes's garage and the non-stop surveillance of Sykes between his home and the corner on which he was known to sell, as reasons to believe controlled substances could be found in Sykes's residence, garages and automobile. A judicial officer's determination of probable cause is given great deference by reviewing courts.

---

1. Although the defendant does not make this argument, our decision in *State v. Swaim*, 412 N.W.2d 568 (1987), filed today, notes that the amendment to Iowa Code section 808.3 enacted by the Iowa legislature in 1985 in response to *Gates* and *Luter* goes beyond the totality-of-the- circumstances approach by requiring some corroboration of the information provided by a confidential informant. Our conclusion in Division III–A of this opinion that the issuance of the warrant comported with state law addresses that argument under this record.

*Christenson v. Ramaeker*, 366 N.W.2d 905, 908 (Iowa 1985).

We conclude this evidence was sufficient as a basis to find probable cause for the issuance of the original warrant to search Sykes's residence, garages and automobiles.

D. *Alleged falsification of the warrant application.* We conclude that defendant's assertion that officer Stainbrook falsified his affidavit is unsupported by the record and give it no further consideration. *See State v. Groff*, 323 N.W.2d 204, 206 (Iowa 1982) (defendant must establish by preponderance of the evidence that affiant knowingly and intentionally made a false statement in search warrant affidavit) (quoting *Franks v. Delaware*, 438 U.S. 154, 155–56, 98 S.Ct. 2674, 2676, 57 L.Ed.2d 667, 672 (1978)).

■ IV. *Search of two automobiles found in defendant's garage but not listed in the search warrant.* Defendant next contends that it was error to admit the evidence found in the Corvette and 1973 Grand Prix inside his garage, because those cars were not specifically listed in the search warrant.

We conclude the search of the two automobiles was reasonable. In *State v. Hilleshiem*, 291 N.W.2d 314 (Iowa 1980), we acknowledged the "essential purpose of the fourth amendment" was to "impose a standard of reasonableness" on government officials in order to protect the privacy and security of individuals. *Id.* at 316. One reasonably expects to find a car in a garage. Indeed, it seems unreasonable to send an officer after a separate warrant because a car is found in a garage he is legally searching. During the hearing on the motion to suppress, the prosecutor noted the analogy to residential searches. We do not expect an officer validly searching a residence, for example, to seek a separate warrant for a locked trunk in that house. The items sought, and the places officers have probable cause to believe they may be found, define the scope of a search. *Maryland v. Garrison*, 480 U.S. ___, ___, 107 S.Ct. 1013, 1017, 94 L.Ed.2d 72, 80–81 (1987); *United States v. Ross*, 456 U.S. 798,

824, 102 S.Ct. 2157, 2172, 72 L.Ed.2d 572, 593 (1982). Because marijuana and other evidence indicative of a drug dealing business are easily concealed within a car, searching the two automobiles in the defendant's garage under the authority of the original warrant was reasonable.

■ V. *Expert witness on the business methods of drug dealers.* Defendant contends the trial court erred in admitting the testimony of officer Stainbrook concerning the practices of drug traffickers in the Waterloo area and identifying certain plant material as marijuana. Defense counsel objected to the foundation laid for Stainbrook's expertise. *See* Iowa R.Evid. 702. In *State v. Taylor*, 336 N.W.2d 721 (Iowa 1983), we stated concerning expert witnesses:

> The trial court has considerable discretion in determining whether a witness has sufficient personal experience to render an expert opinion. Expert opinion testimony is admissible if it will aid the jury in the discharge of its duties and if based on the witness's special training, experience or knowledge. We will not reverse the trial court on admitting expert testimony unless the court's discretion has been manifestly abused.

*Id.* at 726 (citations omitted). The evidence showed officer Stainbrook had extensive experience investigating illegal drug use and sales in Waterloo. Augmenting his experience, he had significant special training and education in this area. A three-year member of the special enforcement unit on narcotics, Stainbrook had testified on a previous occasion as an expert witness on drug sales.

We conclude the trial court did not abuse its discretion in allowing Stainbrook to give the expert testimony challenged by the defendant.

■ VI. *Motion for judgment of acquittal.* Finally, defendant asserts that his motion for a judgment of acquittal under Iowa Rule of Criminal Procedure 18(8)(a) was erroneously overruled. He argues that, as a matter of law, there was insufficient evidence for a jury to find him guilty

of intent to deliver a controlled substance. Intent to deliver is an essential element of the crime charged. *See* Iowa Code § 204.-401(1)(b). In *State v. Luter*, 346 N.W.2d 802 (Iowa 1984), we found no merit to this same assertion based on similar facts. The principles for review of that issue in *Luter* are equally applicable here:

> The governing rule is stated in *State v. Robinson*, 288 N.W.2d 337, 340 (Iowa 1980) ("although Iowa courts view the evidence in the light most favorable to the prosecution they must consider *all* the evidence when determining the sufficiency of the evidence to support a guilty verdict"). Substantial evidence must be introduced in support of the charge, and substantial evidence is "such evidence as could convince a rational trier of fact that the defendant is guilty of the crime charged beyond a reasonable doubt." *State v. Aldape*, 307 N.W.2d 32, 39 (Iowa 1981).

*Id.* at 808–09 (emphasis in original).

In this present case, the jury had before it considerable evidence consistent with the operations of a medium-volume drug dealer. It also had the benefit of officer Stainbrook's testimony explaining the relevance of otherwise innocent items such as finger-held scales, numerous plastic bags and supplies of cash hidden about the defendant's apartment. Defendant argues this evidence is consistent with personal use. Although this is possible, it does not mean the evidence is inconsistent with intended delivery of the controlled substances to others. Even if it were, "[w]hen the testimony is disputed or, if undisputed, when different inferences may be drawn from it, the question is one of fact for the jury." *State v. Martin*, 274 N.W.2d 348, 349 (Iowa 1979); *State v. Sallis*, 238 N.W.2d 799, 802 (Iowa 1976). In the *Luter* opinion, we characterized the defendant's attempt on cross-examination to explain away 360 Dromin pills as devastating to his case. *Luter*, 346 N.W.2d at 809. While defendant did not testify in this case, the jury could well have found the suggestion that he kept over three and one-half pounds of marijuana for personal use equally untenable.

We conclude substantial evidence was admitted from which a jury could have reasonably found intent by the defendant to deliver a controlled substance to other persons. The court correctly overruled defendant's motion for a judgment of acquittal.

VII. *Disposition.* Defendant raises other assignments of error, not discussed above, in which we find no merit.

The judgment of conviction is affirmed.

AFFIRMED.