**IN THE COURT OF APPEALS OF IOWA**

No. 14-1656
Filed April 6, 2016

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**JOHN FRANKLIN DEERING,**
        Defendant-Appellant.
_____


        Appeal from the Iowa District Court for Polk County, Douglas F. Staskal,

Judge.


        A defendant appeals his convictions for first-degree kidnapping, attempted

murder, and willful injury.  **AFFIRMED.**


        Mark C. Smith, State Appellate Defender, and Patricia Reynolds, Assistant

Appellate Defender, for appellant.

        Thomas J. Miller, Attorney General, and Benjamin Parrott, Assistant

Attorney General, for appellee.


        Considered by Tabor, P.J., and Bower and McDonald, JJ.

**TABOR, Presiding Judge.**

Ronald Carris dialed 911 from inside the trunk of his own car, whispering his license plate number to the dispatcher so police could intercept his kidnappers. The phone line remained open while his captors brutally beat Carris with a brick. By the time the Des Moines police tracked the victim's cell phone to Prospect Park, just before 6 a.m. on April 11, 2014, Carris was bleeding heavily from his head injuries and gasping for breath. A coat and glove left at the scene linked John Deering to the crimes. Following a bench trial, the district court found Deering guilty of kidnapping in the first degree, attempt to commit murder, and willful injury.

Deering believes his convictions should be reversed for three reasons. First, he claims the court erred in accepting his last-minute waiver of jury trial. Second, he argues the State failed to offer sufficient evidence of his identity as one of the attackers. And third, he alleges he is entitled to a new trial because the court did not adequately explain its credibility findings. Finding no merit to Deering's appellate challenges, we affirm his convictions.

**I.      Prior Facts and Proceedings**

"I'm in the back of the trunk . . . . They threw me in the back of the trunk . . . . It's a black Impala . . . . They're out here, I can't talk right now . . . . I can't get away, they're right here . . . . I've been in here for fifteen, twenty minutes. Could you GPS me?" So begins the victim's desperate call for help. Carris is able to tell the dispatcher the name of one kidnapper, Debra Oliver, but he did not know the name of her male confederate. Carris also tells the dispatcher he remembered leaving from Sixth Avenue.

After about four minutes, the kidnappers remove Carris from the trunk while the 911 recording continues unbeknownst to them. One kidnapper tells the other "get the brick." Sixty-year-old Carris pleads: "Don't do this. I won't tell anyone. I won't say anything." Listening to the commotion, the dispatcher exclaims: "Oh, they're hitting him." After two more minutes, one of the kidnappers can be heard saying, "He's out." At which point the predominant sound on the recording, as aptly described by the district court, is Carris's "grossly abnormal breathing."

About nine minutes into the call, dispatch locates Carris's cell phone signal as coming from Prospect Park. Just before the call is disconnected, the male kidnapper urges his partner to drag the body. He also can be heard shouting "get my coat." But the coat remained in the Impala, where the police would discover items in the coat's pockets pointing to Deering.

Upon first arriving at the park, the police saw the Impala's rear passenger window was smashed. Outside the car, the police found a large pool of blood, "and from that pool, there were drag marks" toward a nearby wooded area. On the ground at the edge of the wood, an officer located Carris, "injured severely"— bleeding from the head and taking slow, deep breaths. Seeing his concave skull fracture, paramedics rushed Carris to the hospital, where doctors were able to keep him alive. But Carris suffered irreversible brain damage from the beating. After the crime, he remained at the veterans administration hospital and required round-the-clock nursing care.

About twenty feet from where Carris lay, the police found Debra Oliver and took her into custody; they did not locate a second suspect in the park. But at

the same time the police were searching the park, a school-bus driver and his assistant saw a man darting across Prospect Road as they drove their morning route. Because the man was wearing a hood or stocking cap, they could not identify him.

Later that morning, Deering showed up at his mother's house with a swollen face. Deering told her he had been "jumped" and struck in the face. At her encouragement, he went to the emergency room, where he received stitches for a cut inside his lip. Deering later met with his vocational counselor about finding a place to stay. He told the counselor his fat lip resulted from a fight with his brother-in-law. She also noticed his knuckles were bruised and bleeding, which he attributed to punching a wall. He also told her his coat, containing his identification card, had been stolen from the YMCA earlier that day.

Meanwhile, back at Prospect Park, crime scene investigators found a brick, which looked to be soaked with blood; scattered parts of two cell phones, one of which was later determined to belong to the victim; the victim's wallet; and a right-handed black glove. State criminalists later tested the glove for DNA. The DNA profile of the blood on the outside palm of the glove matched that of the victim, while Deering's DNA was discovered inside the glove.

Inside the victim's Impala, investigators found a black leather jacket. In the jacket's pockets, police found various sheets of paper with handwritten notes and phone numbers, showing appointments for Deering, as well as Deering's Iowa identification card. The watermark on the notepaper matched stationery found at the Royal Motel, where Deering had been staying.

The police found Deering at his motel room and took him to the station to be interviewed. During the recorded interview, Deering told the police he had been in a fight with "some dude" he met at the Blazing Saddles bar. Deering denied knowing Debra Oliver or the victim, much less seeing them the previous night. The district court noted the following exchange between the detective and Deering:

> The detective showed Deering a picture of Carris and when Deering denied knowing Carris, the detective said, "OK, you sure do because he's . . . laying half dead in a hospital bed." The detective then said he was trying to find out if Deering is a person "that goes out and prey[s] on weak individuals, OK, in order to rob from them and to hurt people?" Deering responded, "I don't be beating no weak people. Why would I beat up on a weak person?" Then he said, "I don't beat up no . . . I don't want them violent to me . . . . I don't go around beating . . . no, I'm not like that man." Later he said, "You're saying I just beat them, you're saying I supposedly, you're trying to make me say that I beat up and hurt somebody." Up until this point in the interview, the detective had never told Deering that Carris had been "beaten."

The State charged both Deering and Oliver in a joint trial information with kidnapping in the first degree, in violation of Iowa Code section 710.1 (2013), a class "A" felony; attempt to commit murder, in violation of section 707.11, a class "B" felony; and willful injury, in violation of section 708.4(1), a class "C" felony. On June 23, 2014, Deering filed a motion to sever his trial from that of codefendant Oliver, citing *Bruton v. United States*, 391 U.S. 123, 132 (1968). The motion alleged Oliver had inculpated Deering in her statement to police by stating Deering had struck Carris several times. The district court granted the motion to sever in June 2014.

Jury selection for Deering's trial was scheduled to begin on July 28, 2014. On that same day, Deering and his attorney, as well as the county attorney,

signed a waiver-of-jury-trial form. On the morning of trial, defense counsel informed the district court that his client wanted to waive his right to a jury trial. The court engaged in a colloquy with Deering and granted his request to waive a jury trial.

During the bench trial, State's witnesses Cameo Harris and Earl Carmichael testified they had been with Oliver, Deering, and Carris in the early morning hours of April 11, 2014. Harris testified Oliver and Carris had been drinking and using drugs at Harris's house, before they drove to the McDonald's at Sixth Avenue and University, just north of downtown Des Moines. Sitting on a retaining wall outside the restaurant, drinking alcohol, were Carmichael and Deering, who joined them as Oliver drove Carris's car toward a house on University Avenue where they planned to buy more drugs. Harris testified she assumed Carris had money to pay for the drugs. Both Carmichael and Harris testified Deering and Oliver had a heated argument outside the car before going into the drug house, but the witnesses could not hear what they were arguing about. Oliver eventually told Deering he could not get back into the car, though she later circled back and again had words with him. Neither Carmichael nor Harris saw any injuries to Deering when the group dispersed.

The district court issued its findings of fact, conclusions of law, and verdict on August 14, 2014. After carefully detailing the evidence, and reconciling "minor inconsistencies and contradictions in the witnesses' observations," the court found Deering guilty beyond a reasonable doubt on all three counts. The court sentenced him to life in prison without eligibility for parole and concurrent

indeterminate terms of twenty-five and ten years. Deering appeals his convictions.

## II.     Scope and Standards of Review

We review the district court's interpretation of a rule of criminal procedure for the correction of legal error. *State v. Bruce*, 795 N.W.2d 1, 2 (Iowa 2011). To the extent the district court was required to find good cause for Deering's belated waiver of his right to a jury trial under our rules of criminal procedure, we review for an abuse of discretion. *See State v. Mann*, 512 N.W.2d 814, 816 (Iowa Ct. App. 1993).

We review challenges to the sufficiency of the evidence for correction of legal error. *State v. Robinson*, 859 N.W.2d 464, 467 (Iowa 2015). Our scope of review of a criminal conviction is the same whether the factfinder is the court or a jury. *State v. LaPointe*, 418 N.W.2d 49, 51 (Iowa 1988). In assessing the finding of guilt, we view the evidence in a light most favorable to the State. *Id.* We are bound by the court's finding of guilt unless it is not supported by substantial evidence. *Id.* Evidence is substantial if it would convince a rational trier of fact the defendant is guilty beyond a reasonable doubt. *Robinson*, 859 N.W.2d at 467.

When reviewing the court's denial of Deering's motion for new trial based on the weight of the evidence, we look only to see if the district court abused its wide discretion. *See State v. Grant*, 722 N.W.2d 645, 648 (Iowa 2006).

**III. Analysis of Deering's Claims**

**A. Waiver of Right to Jury Trial**

Deering's first assignment of error involves his waiver of a jury trial. On the morning scheduled for voir dire, defense counsel told the district court his client wanted to waive a jury trial: "It's my understanding we are in that time where the county attorney can demand a jury trial. It's my understanding that the county attorney in this case is consenting to a bench trial . . . ." Defense counsel added, although Deering was proceeding against counsel's advice, "it is his decision to make."

The court suggested if Deering's decision was voluntary and intelligent, it would accept his waiver "even though it is, as I read the rule, outside the time within which he could do that even for good cause." The court asked Deering to explain in his own words why he wanted to waive a jury trial. Deering responded: "I just prefer that. You know, I'm comfortable with just sitting the way it is, with the county attorney, with my attorney and a judge to hear the case." The court conducted a thorough colloquy with Deering and accepted his waiver. Before the State offered its first witness, defense counsel asked Deering to reaffirm that he wished to have "the judge alone" determine his guilt or innocence, and Deering did so.

On appeal, Deering does not assert his waiver was involuntary or uninformed.[1] Neither does he claim his trial counsel was ineffective in allowing him to waive a jury trial. Rather, he contends the district court abused its

---

[1] Deering mentions he was on medication prescribed for schizophrenia at the time of the waiver hearing but only argues "[t]his factor casts more doubt on the judge's decision and the existence of good cause for the last minute waiver."

discretion in granting his request to waive a jury trial on the morning of trial without finding good cause under Iowa Rule of Criminal Procedure 2.17(1), which provides:

> Cases required to be tried by jury shall be so tried unless the defendant voluntarily and intelligently waives a jury trial in writing and on the record within 30 days after arraignment, or if no waiver is made within 30 days after arraignment the defendant may waive within ten days after the completion of discovery, but not later than ten days prior to the date set for trial, as provided in these rules for good cause shown, and after such times only with the consent of the prosecuting attorney. The defendant may not withdraw a voluntary and knowing waiver of trial by jury as a matter of right, but the court, in its discretion, may permit withdrawal of the waiver prior to the commencement of the trial.

Deering interprets rule 2.17(1) as precluding waiver less than ten days before trial without the consent of the prosecutor *and* a showing of good cause. He contends he is entitled to a new trial because the district court did not hold him to proving the second requirement—good cause.

We are not convinced the good-cause requirement in rule 2.17(1) is intended to protect a defendant from his own knowing and voluntary decision to waive a jury trial. *See generally State v. Feregrino*, 756 N.W.2d 700, 708 (Iowa 2008) ("If as a matter of fact the waiver was knowingly and voluntarily given, no . . . structural defect is present."). Originally, the rule provided defendants with an absolute right to waive a jury trial without any deadlines. *See State v. Seimer*, 454 N.W.2d 857, 865 (Iowa 1990) (discussing amendments to then rule 16(1)). The legislature added the first deadline of thirty days from arraignment in 1981 to assist with "judicial economy in the trial courts." *Mann*, 512 N.W.2d at 816; *see* 1981 Iowa Acts ch. 206, § 16. The legislature inserted the good-cause language in 1986 in conjunction with the additional, discovery-related time limitation. *See*

1986 Iowa Acts ch. 1106, § 1; *see also Seimer*, 457 N.W.2d at 865 ("It is the legislature's prerogative to decide whether, and under what circumstances, the right to jury trial may be waived."). Under the current language of the rule, a defendant who wishes to waive the right to a jury trial more than thirty days after arraignment bears the burden to show good cause. The question here is whether Deering, a defendant who opted for a bench trial, arguably without showing good cause, can attack his convictions on that basis.

The State argues we should not reach the merits of Deering's claim because he either failed to preserve error or is judicially estopped from taking inconsistent positions in the trial court and on appeal. We agree Deering "cannot now predicate error upon the court's doing the very thing [he] requested the court to do. Especially is this true in the absence of any showing of prejudice." *See State v. Beckwith*, 53 N.W.2d 867, 869 (Iowa 1952); *see also Jasper v. State*, 477 N.W.2d 852, 857 (Iowa 1991) (rejecting defendant's challenge to his attorney's recommendation concerning waiver of jury trial and noting Jasper "invited the error of which he now complains"); *State v. Hammer*, 66 N.W.2d 490, 494 (Iowa 1954) ("Manifestly defendant cannot blow hot and cold . . . . [H]e cannot assert here an error into which he himself led the trial court."). We conclude Deering waived his claimed error by affirmatively seeking a bench trial after the deadlines set out in the rule and by doing so voluntarily and intelligently. A defendant may not whipsaw the trial court by taking contrary positions in the same proceeding. *Cf. State v. Johnson*, 756 N.W.2d 682, 688 (Iowa 2008) (discussing right to self-representation and quoting *Faretta v. California*, 422 U.S. 806, 834 n.46 (1975) ("[A] defendant who elects to represent himself cannot

thereafter complain that the quality of his own defense amounted to a denial of 'effective assistance of counsel.'")).

Equally debilitating to Deering's argument is the lack of prejudice arising from his jury-trial waiver. Because Deering is alleging nonconstitutional error, the test for prejudice is whether his rights have been "injuriously affected by the error" or whether he has "suffered a miscarriage of justice." *See State v. Neiderbach*, 837 N.W.2d 180, 193 (Iowa 2013). We presume prejudice unless the State is able to establish the contrary. *State v. Parker*, 747 N.W.2d 196, 209 (Iowa 2008) (noting existence of overwhelming evidence is a circumstance to consider in determining harmless error). The State argues "[c]onsidering the strength of the evidence" against Deering, he suffered no miscarriage of justice by virtue of his jury-trial waiver. In the converse situation, our supreme court reasoned that denying a defendant's untimely request for a bench trial "only subjects him to a trial by an impartial jury" and is not a "basis for reversal." *Mann*, 512 N.W.2d at 816. Deering does not assert the presiding judge was anything but impartial. In fact, the record shows the district court was careful and responsive to objections during the trial and drafted a comprehensive and well-reasoned ruling after the trial.

During the waiver hearing, Deering told the court he was more "comfortable" with the court deciding his fate. His inclination was reasonable considering the chilling nature of the 911 call and the gruesome photographs of the victim's injuries. *Cf. Jasper*, 477 N.W.2d at 857 (finding attorney's tactical decision was within normal range of competency in recommending jury-trial waiver as strategy to keep "potentially inflammatory" allegations away from a jury

composed of lay persons). Given all of the circumstances, we find any error in the court's grant of Deering's jury-trial waiver to be harmless.

### B. Sufficiency of the Evidence

"The questions in this case all have to do with identification," defense counsel told the court in moving for judgment of acquittal. Deering advances the same identity argument on appeal. He acknowledges he "may have been involved in this case in some way, only in that he may have been with the victim and others, hours before the crimes were committed." But he contends the State's evidence "did not sufficiently show that he participated or aided anyone in the commission of the crimes." He also faults the district court for accepting robbery as a motive for the crimes.

As a starting point, we reiterate motive is not an element of these crimes and its proof is not essential to our sustaining Deering's convictions. *See State v. Knox*, 18 N.W.2d 716, 724 (Iowa 1945). But even so, we find substantial evidence in the record to support the district court's factual finding that the two kidnappers were intent on robbing their victim. The district court concluded: "It is likely beyond a reasonable doubt that whatever Oliver and Deering were discussing or arguing about, it had to do with their plan to rob and kill Carris." The trier of fact is allowed to make legitimate inferences from the evidence in the record. *State v. Parkey*, 471 N.W.2d 896, 897 (Iowa Ct. App. 1991). The State's witnesses believed Carris had the means to buy the illegal drugs sought by the group. The kidnappers were driving Carris's car, and his wallet and cell phone were found on the ground at the crime scene. From this evidence, it was not unreasonable for the district court to infer robbery as a motive for the crimes.

Beyond the robbery motive, we find ample evidence in the record to support the district court's determination of Deering's guilt beyond a reasonable doubt. The coat left in Carris's car contained Deering's identification card and other documents bearing his name. The notepaper appeared to come from his current motel room. And most damning, a bloody glove found at the scene had Deering's DNA on the inside and Carris's DNA on the outside.[2]

Deering tries to distance himself from the coat. He acknowledges it contained items connected to him. But he insists the evidence failed to establish that he wore the coat in the past or that it belonged to him, pointing out he reported to the police and his counselor that *his* coat had been stolen. The district court effectively distilled the implausibility of Deering's not-my-coat defense, stating:

> One must believe too many unbelievable facts and coincidences to believe that Deering was not the other person with Oliver that morning. One would have to believe:
>     1. that Carmichael and Harris are lying and or mistaken that they know Deering (and he them) and were with Deering that morning.
>     2. that the person who stole Deering's coat bothered to keep and stuff into his own coat, a large number of tattered, folded, and worn scraps of worthless paper with meaningless names and phone numbers scribbled on them.
>     3. that the person who stole Deering's coat at some unknown prior time is the same person who helped Oliver kidnap the victim shortly after Deering had been with Oliver and the victim.
>     4. that on the same morning that Oliver and the person who stole Deering's coat kidnapped and tried to kill the victim, Deering suffered injuries of the same type that a person committing the crime might well have suffered.

---

[2] On appeal, Deering suggests the glove "may have been previously worn by this defendant and left in the victim's car and later used by Ms. Oliver and the other perpetrator." When different inferences reasonably may be drawn from the evidence, the question is for the trier of fact. *State v. Sykes*, 412 N.W.2d 578, 585 (Iowa 1987).

The State also points to Deering's interview with detectives as a potent piece of evidence. While Deering did not make admissions, his denials were incriminating. *See State v. Cox*, 500 N.W.2d 23, 25 (Iowa 1993) ("A false story told by a defendant to explain or deny a material fact against him is by itself an indication of guilt . . . ."). Most glaringly, Deering disclaimed any knowledge of Oliver, Carmichael, or Harris, though they had all been friends for some time. Carmichael and Harris testified that they were with Oliver, Deering, and Carris shortly before the kidnapping. The district court believed their testimony. We defer to the court's credibility determinations. *See State v. Jennings*, 195 N.W.2d 351, 357 (Iowa 1972). Deering also told varying stories about how he received the fresh injuries to his mouth and knuckles, which contributed to the district court's conclusion that his "lies were tantamount to admissions of guilt."

When viewed in the light most favorable to the court's verdicts, including all reasonable inferences that may be deduced from the evidence, we determine substantial evidence existed to find Deering guilty beyond a reasonable doubt on all three counts.

### C. Motion for New Trial

In addition to his substantial-evidence challenge, Deering contests the weight of the State's evidence. He asserts: "The court should have engaged in a better analysis of the credibility of the witnesses." He questions the veracity of State's witnesses Harris and Carmichael.

The granting of a new trial based on the conclusion that a determination of guilt is against the weight of the evidence is "reserved for those situations in which there is reason to believe that critical evidence has been ignored in the

fact-finding process." *Grant*, 722 N.W.2d at 648-49. The district court did not overlook any critical evidence in this case. In fact, just the opposite occurred. The district court carefully reviewed all the evidence presented at trial and attempted to reconcile conflicting evidence—including the variances in testimony given by Harris and Carmichael concerning the argument between Oliver and Deering. We find no basis for concluding the court ignored any vital evidence in its decision process. The district court did not abuse its discretion in denying Deering's claim that its decision was against the weight of the evidence. The evidence in this case does not preponderate heavily against the court's verdict. *See State v. Ellis*, 578 N.W.2d 655, 659 (Iowa 1998).

**AFFIRMED.**