MANSFIELD, Justice.
A detective prepared a search warrant application, brought the application before a judicial officer, and without signing the application orally swore that it was true and correct in the presence of the judicial officer. The judicial officer approved and signed the warrant. Four days later, the warrant was executed.
The question now presented is whether a warrant issued under these circumstances violates Iowa Code section 808.3. We conclude that it does not, because section 808.3 permits the warrant applicant to swear to the truth of the warrant applica *906 tion in the presence of the judicial officer even if, inadvertently, the applicant fails to sign it.
For these reasons, we reverse the granting of the defendants’ motions to suppress and remand for further proceedings.
I. Background Facts and Proceedings.
In March 2015, Deputy Dan Furlong and fellow agents used a confidential source to make two crack cocaine purchases from Maurice Angel. This confidential informant had been known to Furlong and his fellow agents for three years, had provided reliable information in the past, and had not previously given false information. During those buys, which were visually recorded, Furlong and the other agents saw Angel driving a silver 2002 Chevrolet Tahoe. After the second buy, Angel returned to a residence at 1916 E. 38th St. in Davenport. A utilities check indicated that service was being provided to the residence under the name Kemia McDowell.
The following month, Deputy Furlong obtained a warrant for a GPS tracker that was attached to the Tahoe. On April 22, the tracker was placed on the Tahoe, and for the next two weeks, it confirmed that the vehicle was parked in front of 1916 E. 38th St. every night except one.
On the evening of May 7, Angel was observed by law enforcement parking the Tahoe and then walking directly into 1916 E. 38th St. Approximately fifteen minutes later, Angel was seen leaving the residence and driving to a McDonalds. Angel’s Tahoe pulled into the McDonalds parking lot next to another vehicle. An individual got out of the other vehicle, and the other individual opened the front door of Angel’s Tahoe and received an item. The entire encounter took less than two minutes. This other individual was a person on probation for possession of a controlled substance with intent to deliver and failure to affix a drug stamp.
For the next four hours, Angel’s Tahoe continued to make a series of brief stops in various parking lots. Furlong suspected some of the stops were for the purpose of drug sales while others may have been efforts by Angel to determine if he was being followed. At about 1:15 a.m. on May 8, Angel’s Tahoe returned to 1916 E. 38th St.
Later on May 8, Furlong prepared a warrant application to search the residence at 1916 E. 38th St, At the subsequent suppression hearing, Furlong described the process by which he obtained the actual search warrant:
Q. Detective Furlong, I’m going to hand you what’s been marked Defendant’s Exhibit A. I’d like for you to take an opportunity to look at that and tell me if you recognize Defendant’s Exhibit A. A. Yes, I do.
Q. How do you recognize Defendant’s Exhibit A? A. This is the search warrant that I typed for the residence of 1916 East 38th Street in Davenport.
[[Image here]]
Q. Detective Furlong, when you prepared this set of documents, what did you do initially before presenting it to a judge? A. Once I finish preparing it, I brought it to you in the County Attorney’s Office to review.
Q. And was the document reviewed? A. Yes, it was.
Q. Does the State's signature appear on that document reflecting that review? A. Yes, it does, on page 4.
Q. Okay. And is that for the application for search warrant? A. Yes, it is.
Q. Once the State had reviewed that document, what was the next step you *907 took? A. The next step that I took was to find a judge to review the search warrant.
Q. Okay. Where did you go to do that? A. I walked to the third floor of the Scott County courthouse.
Q, Were you able to locate a judge? A. Yes, I did.
Q. Who? A. Judge Henry Latham.
Q. Where did you locate Judge La-tham at? A. I walked up the west stairwell after leaving the County Attorney’s Office and I don’t remember what door that is called. It’s directly to the west behind us. And when I walked into the back hallway of the courtroom for district court, I ran into Judge Latham and I asked him if he had time to look at the search warrant.
Q. Was Judge Latham willing to look at this application for search warrant and the attached documents? A. Yes.
Q. Now, where did Judge Latham review these documents at? A. It was directly outside of the other judges’ chambers in the hallway.
Q. Okay. Outside of Courtroom 4 here? A. Outside the courtroom.
Q. When you presented the documents to Judge Latham, what happened initially? A. The search warrant—the same as every other search warrant. He asked me to raise my right hand and asked me to swear and affirm that everything in here was true and correct to the best of my knowledge.
Q. And then did you take that oath? A. Yes, I did.
Q. And did you swear and affirm before Judge Latham that the information contained within the application for search warrant was true and correct? A. Yes, I did.
Q. Now, having taken the oath, what did you observe Judge Latham do next? A. Judge Latham reviewed the search warrant and he signed the search warrant in all three places.
THE COURT: You’re going to have to speak up. You’re dropping off at the end. Judge Latham reviewed it and what? A. Judge Latham reviewed the search warrant and he signed the search warrant in three separate places on the application on the endorsement and on the search warrant.
Q. Now, in looking at the signature page for the application to search warrant, is there a signature on there? A. Is my signature on there?
Q. Right. A. No, it’s not.
Q. Okay. And then can you explain how that came about? A. I—after he swore me in, I handed him the documents or I handed him the documents first thing, he swore me in, and he reviewed everything and signed it in three places and returned it to me.
Q. Was it an oversight then that your signature did not get on the document? A. Yes, it was.
Q. Now, does the application for search warrant on the signature page indicate a date that it was presented to Judge Latham? A. May 8, 2015.
Q. And in going to the search warrant page, does it set forth a location where Judge Latham can date and sign when he would have approved the search warrant? A. Yes, it does.
Q. And what does it set forth? A. It was on May 8, 2015 at 3:22 p.m.
Q. Now, to be clear, were you given the oath or affirmation? A. Yes, I was.
Furlong executed the warrant the morning of May 12. At that time, McDowell was present in the residence and smoking marijuana in the presence of two young chil *908 dren. During the search, an unlabeled pill bottle containing 11.6 grams of crack cocaine, 3.6 grams of powder cocaine, 9 grams of marijuana, a digital scale, a marijuana grinder, and $703.00 in cash were collected.
Angel and McDowell were charged with possession with intent to deliver crack cocaine, possession with intent to deliver powder cocaine, possession with intent to deliver marijuana, conspiracy to commit possession with intent to deliver a controlled substance, sponsoring a gathering where controlled substances are unlawfully used, and a drug tax stamp violation. See Iowa Code § 124.401(1)(&)(3), (l)(c)(2), (1)(¾ (2015); id. § 124.407; id. § 706.1(1); id. § 453B.12(2). McDowell was also charged with child endangerment. Id. § 726.6(l)(a).
Angel and McDowell moved to suppress the results of the search based on Deputy Furlong’s failure to sign the warrant application and on lack of probable cause. A hearing on the motions to suppress took place on October 7. Following the hearing, the district court issued a ruling granting the motions to suppress. The' court concluded that Iowa law required the warrant application to be signed in the presence of the issuing judicial officer. The court reasoned, “Detective Furlong’s failure to sign the search warrant application means it was not ‘supported by the person’s oath or affirmation’ as required by Iowa Code section 808.3.” Citing State v. Easter, 241 N.W.2d 885 (Iowa 1976), the district court also concluded that it could not receive testimony given at a hearing on a motion to suppress a search warrant. It thus declined to consider Deputy Furlong’s testimony.
Lastly, the district court took note of a further matter that had been discussed at the suppression hearing. Although the judge had signed (1) the warrant, (2) the jurat beneath the space for Deputy Furlong’s signature on the application, and (3) the endorsement of the warrant application on May 8, he had failed to do any striking out or circling on the endorsement form where it said, “The information (is/is not) found to justify probable cause,” and “I therefore (do/do not) issue probable cause.” In the district court’s view, this fact also supported granting the defendants’ motions to suppress.[1]
We granted the State’s application for discretionary review and retained the appeal.
II. Standard of Review.
We review challenges to warrant applications based on statutory requirements for corrections of errors at law. State v. Davis, 679 N.W.2d 651, 656 (Iowa 2004); State v. Day, 528 N.W.2d 100, 102 (Iowa 1995).
III. Analysis.
The question we have to answer is one of statutory interpretation: Did the warrant comply with Iowa Code section 808.3? That section provides,
A person may make application for the issuance of a search warrant by submitting before a magistrate a written application, supported by the person’s oath or affirmation, which includes facts, information, and circumstances tending to establish sufficient grounds for granting the application, and probable cause for believing that the grounds exist. The application shall describe the person, place, or thing to be searched and the property to be seized with sufficient *909 specificity to enable an independent reasonable person with reasonable effort to ascertain and identify the person, place, or thing. If the magistrate issues the search warrant, the magistrate shall endorse on the application the name and address of all pei’sons upon whose sworn testimony the magistrate relied to issue the warrant together with the abstract of each witness’ testimony, or the witness’ affidavit. However, if the grounds for issuance are supplied by an informant, the magistrate shall identify only the peace officer to whom the information was given. The application or sworn testimony supplied in support of the application must establish the credibility of the informant or the credibility of the information given by the informant. The magistrate may in the magistrate’s discretion require that a witness upon whom the applicant relies for information appear personally and be examined concerning the information.
Iowa Code § 808.3.
We believe the warrant complied with the statute. The application was “supported by the person’s [i.e., Deputy Furlong’s] oath or affirmation.” Id. The statute does not state that the oath or affirmation itself must be in writing. To the contrary, the statute requires a “written application,” while separately requiring that the written application be “supported by the person’s oath or affirmation.” Id. Both prerequisites were met here. The adjective “written” modifies “application,” not “oath or affirmation.”
Iowa Code section 808.3 contemplates that the magistrate may rely on “sworn testimony.” Id. It is of course true that the magistrate must make an abstract of any oral testimony that he or she receives. In State v. Liesche, we recognized,
[I]t was the intent of the legislature ... to require the sufficiency of probable cause for issuance of a search warrant to be tested entirely by the recitals in affidavits and the magistrate’s abstracts of oral testimony endorsed on the application. No other evidence bearing on this issue should be received in a suppression hearing. All essential facts bearing on the existence of probable cause must either be included in an affidavit or affidavits presented to the issuing officer or in the issuing officer’s abstract or abstracts of sworn oral testimony. The search warrant must stand or fall on the facts shown in that manner.
228 N.W.2d 44, 48 (Iowa 1975).
But Liesche stands only for what it says, namely, that the “essential facts bearing on the existence of probable cause” must appear either in the warrant application or in the abstract of testimony. Id. Nothing in Liesche says that the fact that an oath or affirmation was given cannot be proved up later.
Our decision in State v. Harris, 436 N.W.2d 364 (Iowa 1989), offers guidance for the present case. In Harris, a police officer sought a search warrant based entirely on the hearsay statements of a confidential informant. Id. at 369. Because the magistrate was “less than satisfied with these hearsay averments, he asked that the informant be brought before him for questioning under oath.” Id. After questioning the informant under oath, the magistrate issued the warrant, merely noting the informant’s name on the warrant application as one of the “persons upon whose sworn testimony the magistrate has relied to issue a warrant.” Id.
On appeal, the defendant argued that the search results should have been suppressed because there was no record or abstract of the informant’s testimony, which had been necessary to establish *910 probable cause. Id. We held otherwise, explaining as follows:
The defendant contends that in reviewing the probable cause finding we may not consider any of the circumstances involving the informant’s personal appearance before the magistrate. Consideration of such evidence is precluded, he asserts, by our decision in State v. Liesche, 228 N.W.2d 44, 48 (Iowa 1975), requiring that all evidence relied on in issuing a search warrant must be shown on the search warrant application or abstracted by the magistrate. We do not find that Liesche defeats the analysis contained in the preceding paragraph.
The Liesche doctrine only precludes the supplying of new facts at a suppression hearing which were not abstracted by the magistrate or contained in the affidavits supporting the warrant application. In the present case, all of the facts relied upon by the magistrate were in the affidavit supplied with the warrant application. The act of listing the informant as an additional witness indicated quite clearly, we believe, that the informant had sworn to the truth of the statements attributed to him in [the officer’s] affidavit. The additional testimony taken from the magistrate at the suppression healing only served to corroborate that which was already to be inferred from the record. Given these circumstances, we conclude that this procedure did not violate the Liesche restrictions.
Id. at 370-71.[2]
Hence, we decided in Harris that so long as the facts themselves were found in the written warrant application, it was proper to “infer[] from the record” that the informant had sworn to those facts. Id. If we applied Harris here, we could infer from the record—even without the suppression hearing testimony—that Deputy Furlong swore to the facts contained in the warrant application. The judge’s signature on the jurat immediately following the space for Deputy Furlong’s signature allows that inference. Regardless, Deputy Furlong’s testimony eliminates any doubt.
The court below expressed concern that if it considered Furlong’s testimony, it would also have to receive testimony (if requested) from the judge who issued the warrant. Yet Harris demonstrates there is nothing necessarily amiss about such testimony. The magistrate testified in Harris, and we voiced no concern, while noting that the testimony “only served to corroborate that which was already to be inferred from the record.” Id. We allow magistrates to testify at suppression hearings in other contexts, for example, when a claim is made that the officer omitted material information from the warrant application. See State v. McPhillips, 580 N.W.2d 748, 751 (Iowa 1998); see also State v. Aldape, 307 N.W.2d 32, 36-37 (Iowa 1981) (relying on magistrate testimony in overruling a motion to suppress and concluding that the defendant’s subsequent statements were voluntary).
Of course, the better practice would be to avoid the need for taking testimony from either the applicant or the issuing magistrate. This can be done by ensuring that the applicant signs the application in the magistrate’s presence. Here that did not occur due to an oversight. *911 However, the issuance of the warrant still complied with Iowa Code section 808.3.
Although the question here involves interpretation of an Iowa statute, our decision today appears to be consistent with the prevailing view in other jurisdictions. One guidepost is the LaFave treatise on search and seizure law. See 2 Wayne R. LaFave, Search and Seizure: A Treatise on the Fourth Amendment § 4.3(e), at 658 (5th ed. 2012). Our court frequently cites this treatise.[3]
LaFave states,
[A] written affidavit is not per se defective because it contains no signature or because it is shown that the signature was affixed subsequent to the search; in such instances it is still open to the prosecution to shoiv by testimony that the affiant had 'taken an oath.
Id. at 661 (emphasis added). LaFave then goes on to cite decisions from Florida, Louisiana, Maryland, Massachusetts, Michigan, and Texas in support of this statement. Id. at 661-62 n.64.[4] Still other states, not cited in the LaFave treatise, have similarly held.[5]
LaFave does acknowledge that “[i]n some jurisdictions, the applicable statutes or court rules may be more strict.” Id. at 662 n.64. His list of stricter jurisdictions does not include Iowa. See id.[6]
“There is a preference for warrants and we construe them in a commonsense manner, resolving doubtful cases in favor of their validity.” State v. Sykes, 412 N.W.2d 578, 581 (Iowa 1987). Thus, we do *912 not adopt the view that the warrant was invalid because the issuing judge, despite signing the warrant, the application endorsement, and the jurat to the application, did not strike out the words “is not” from two sentences in the endorsement. Based on the documentation before us, no doubt exists that the judge found probable cause to issue the warrant and approved the warrant. See id. at 581-82 (finding that the magistrate’s signature at the bottom of an instrument where the applicant attested to the reason for an informant’s reliability was sufficient to allow the conclusion that the magistrate had found the informant reliable for the same reason). Signing the warrant was the essential act under Iowa Code section 808.4, and that occurred.[7]
IV. Conclusion.
For these reasons, we reverse the district court’s granting of the motions to suppress and remand for further proceedings consistent with this opinion. We do not address the question whether probable cause existed for issuance of the search warrant and leave that for the district court’s determination on remand.
REVERSED AND REMANDED FOR FURTHER PROCEEDINGS.
All justices concur except Appel, Wiggins, and Hecht, JJ., who dissent.

. The district court’s suppression ruling did not reach the defendants’ argument that the warrant application did not provide probable cause to justify the search of the residence.

. Easter, a pre-Liesche decision cited by the district court, likewise stands only for the proposition that the basis for probable cause must be set forth on "facts recited in the affidavits and the abstracts of oral testimony endorsed on the application," See 241 N.W.2d at 886.

. See, e.g., State v. Lindsey, 881 N.W.2d 411, 424 n.4 (Iowa 2016); State v. Gaskins, 866 N.W.2d 1, 36-37 (Iowa 2015) (Appel, J., concurring specially); State v. Kern, 831 N.W.2d 149, 168-70 (Iowa 2013); State v. Baldon, 829 N.W.2d 785, 797-99 (Iowa 2013); State v. Breuer, 808 N.W.2d 195, 199 (Iowa 2012).

. See Moreno-Gonzalez v. State, 67 So.3d 1020, 1027 (Fla. 2011); State v. Roubion, 378 So.2d 411, 413-14 (La. 1979); Valdez v. State, 300 Md. 160, 476 A.2d 1162, 1166-67 (1984); Commonwealth v. Young, 6 Mass.App.Ct. 953, 383 N.E.2d 515, 517 (1978); People v. Mitchell, 428 Mich. 364, 408 N.W.2d 798, 801 (1987); Smith v. State, 207 S.W.3d 787, 793-94 (Tex. Crim. App. 2006).

. See Milne v. State, 607 P.2d 360, 362 (Alaska 1980) (upholding the validity of a warrant based on testimony from the magistrate and the officer at the suppression hearing "that the witnesses were sworn before they testified”); State v. Colon, 230 Conn. 24, 644 A.2d 877, 882 (1994) ("[Although probable cause must be determined from the four corners of the warrant, we are not confined to the four comers of the warrant in determining whether the affidavit in support of probable cause has been validly executed.”); People v. Vera, 393 Ill.App.3d 94, 332 Ill.Dec. 491, 913 N.E.2d 86, 90 (2009) ("Although the best practice would be to sign the complaint, the facts here show that the defect was only technical and therefore insufficient to invalidate the warrant.”); State v. Nunn, 99 Or.App. 503, 783 P.2d 26, 26-27 (1989) (holding that a court may consider extrinsic evidence in determining whether the oath or affirmation requirement of the Oregon Constitution had been met); State v. Keith, 978 S.W.2d 861, 869-70 (Tenn. 1998) ("[A] majority of other state courts considering whether a search warrant is void based upon an affidavit which contains an incomplete or defective jurat .., allow extrinsic evidence to prove that the affidavit was properly sworn.”).

.LaFave cites to a case from Georgia and a case from Pennsylvania for this proposition. See State v. Barnett, 136 Ga.App. 122, 220 S.E.2d 730, 731-32 (1975) .(holding that the application had to be signed because Georgia law requires a "written complaint,” which it equated to an "affidavit”); Commonwealth v. Williams, 237 Pa.Super. 324, 352 A.2d 67, 68 n.2 (1975) (noting that an officer's testimony at a suppression hearing "that he was in fact properly sworn ... is of no consequence in light of Pa. R. Crim. P., Rule 2003(b)”). But see State v. Herring, 387 S.C. 201, 692 S.E.2d 490, 496 (2009) ("[T]he language does not state an affidavit must be sworn in person. It only requires the affidavit be sworn.”).

. Iowa Code section 808.4 provides,
Upon a finding of probable cause for grounds to issue a search warrant, the magistrate shall issue a warrant, signed by the magistrate with the magistrate’s name of office, directed to any peace officer, commanding that peace officer forthwith to search the named person, place, or thing within the state for the property specified, and to bring any property seized before the magistrate.
State v. Beckett, 532 N.W.2d 751 (Iowa 1995), is not a "check the box” case and is not on point. At that time, state law required the magistrate to specify reasons for finding a confidential informant credible. See id. at 754. The magistrate provided no reasons, instead putting a line through this part of the form. Id. at 753. We held this did not substantially comply with the statute. Id. at 754.
By contrast, the present case does not involve a judicial officer’s failure to give reasons as required by law. Instead, there was at most a scrivener error in failing to strike out a few words. The judge’s signatures on the warrant, the application endorsement, and the jurat all signify that the judge found probable cause for issuance of the warrant. Sykes, which Beckett discussed and distinguished, see id., is a far more relevant precedent. ■